Carol Ann SETTER, Appellant,

v.

A.H. ROBINS COMPANY, INC., a
corporation, Appellee.

No. 83–2675.

United States Court of Appeals,
Eighth Circuit.

Submitted Oct. 8, 1984.

Decided Nov. 30, 1984.

George G. Gubbins, Jr., Hamel, Minn., for appellant.

Thomas W. Kemp, San Francisco, Cal., for appellee.

Before ARNOLD, FAGG and BOWMAN, Circuit Judges.

ARNOLD, Circuit Judge.

In this products-liability case Carol Ann Setter alleges that she was injured by wearing a Dalkon Shield, an intrauterine contraceptive device manufactured by the defendant A.H. Robins Co. The jury found that the device did not have a design defect, and that Robins (1) adequately warned physicians of the risks associated with the Dalkon Shield, and (2) was not negligent in the design, manufacture, testing, or inspection of the Dalkon Shield. On this verdict judgment was entered for defendant. Setter appeals, arguing that certain docu-

1. The Hon. Diana E. Murphy, United States District Judge for the District of Minnesota, tried the case.

2. The Hon. Donald D. Alsop, United States District Judge for the District of Minnesota, decided the motion for partial summary judgment.

3. Plaintiff also claims that an exhibit 787 was excluded. Defendant says it was admitted. The

ments were wrongly excluded by the District Court[1], that one of defendant's counsel "tampered" with her expert witness, and that the District Court[2] erred in denying her motion for partial summary judgment based on a theory of collateral estoppel. We affirm.

I.

Most of the documents Setter claims were wrongly excluded had been admitted in a previous trial, *Strempke v. A.H. Robins, Co., Inc.*, No. 3–80 Civ. 169 (D.Minn. June 6, 1983), as exhibits accompanying the testimony of one of Strempke's experts, Dr. Howard Tatum. Dr. Tatum's testimony was read into the record by plaintiff in this trial. At least three of the exhibits plaintiff claims were wrongly excluded were actually admitted (Exs. 331, 392a, and 436).[3] The substance of the other exhibits which accompanied Dr. Tatum's testimony was covered both in Dr. Tatum's testimony and in Dr. Robert Diamond's testimony. Dr. Diamond was one of plaintiff's experts, and defense counsel used some of Dr. Tatum's work in cross-examining Dr. Diamond.

The transcript of the testimony of Dr. Daniel Mishell, who also testified in the *Strempke* case, was also read to the jury in Setter's trial. Plaintiff offered, with Dr. Mishell's testimony, a written analysis by a panel of doctors including Dr. Mishell. The only ground plaintiff offers for the admission of the exhibits accompanying the testimony of Dr. Mishell and Dr. Tatum is that they were admitted in the *Strempke* trial. We do not feel that the court abused its discretion in excluding those exhibits, since their essence was before the jury already in the form of other evidence.

District Court's order dealing with admission of documents admitted an exhibit 788, excluded an exhibit 767, and made no reference to exhibit 787. It seems that exhibit 787 was not excluded, but if it was, no error resulted, for the reasons stated in text.

■ The other exhibits plaintiff claims were wrongly excluded were medical reports by Dr. Diamond and Dr. Underwood. Plaintiff says these reports were part of a larger group of documents and that the parties had stipulated to their admission, subject to some "sanitizing" by defense counsel. The substance of these doctors' reports was covered by the evidence which was admitted. The District Court acted within its discretion in excluding them. It is in a much better position than we are to make informed judgments on this sort of evidentiary question.

■ Plaintiff's claim that defense counsel improperly spoke with her expert witness was a brief topic of an in-chambers discussion. She requested no relief, and the District Court made no findings on this accusation. Hence, there is nothing for us to review.

## II.

■ The *Strempke* trial ended in a jury verdict for the plaintiff. Setter moved for summary judgment on the issue of liability, claiming that Robins should be collaterally estopped to relitigate the questions of design defect and negligence by the judgment entered against it in *Strempke*. Setter's request was for the application of what has been called offensive nonmutual collateral estoppel. The estoppel sought was nonmutual because Setter, who was not a party to the *Strempke* case, would not have been bound had judgment been rendered for Robins in that case. She nevertheless asks that she be given the benefit of the judgment previously rendered against Robins. And the requested estoppel is offensive because the plaintiff here, Setter, is seeking to foreclose the defendant Robins from litigating an issue that it previously litigated unsuccessfully in an action with another plaintiff.

The leading Supreme Court case on nonmutual collateral estoppel is *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 99 S.Ct.

645, 58 L.Ed.2d 552 (1979). In recognizing the concept of offensive collateral estoppel, the Supreme Court said:

> [T]he preferable approach ... is not to preclude the use of offensive collateral estoppel, but to grant trial courts broad discretion to determine when it should be applied. The general rule should be that in cases where ... the application of collateral estoppel would be unfair to a defendant, a trial judge should not allow the use of offensive collateral estoppel.

*Id.* at 331, 99 S.Ct. at 651.

Under this rule, the District Court's decision not to apply collateral estoppel here can be reversed only if there has been an abuse of discretion. We find no such abuse. The principal reason given by the District Court for ruling against the plaintiff on this issue was that Robins had won some previous judgments on the question of liability, as well as losing some. If *Strempke* had been the only previously tried case, a different question would have been presented, but it was not. At the time of the District Court's ruling, Robins had tried twenty-one Dalkon Shield cases to completion. Twelve of these cases had resulted in a defendant's verdict or decision. One had ended in a hung jury, and Robins had lost eight. This is one of the situations in which the Supreme Court in *Parklane* indicated that trial courts might choose to refuse collateral-estoppel effect to a previous judgment against a defendant. "Allowing offensive collateral estoppel may ... be unfair to a defendant if the judgment relied upon as a basis of the estoppel is itself inconsistent with one or more previous judgments in favor of the defendant." 439 U.S. at 330, 99 S.Ct. at 651 (footnote omitted). In the circumstances of this case this factor alone is sufficient to persuade us that the District Court did not abuse its discretion. Defendant had won a majority of the litigated judgments on the question of Dalkon Shield liability at the time of the District Court's ruling, and plaintiff has not suggested any special circumstances that should have led the District Court to disregard or otherwise dis-

count those cases in which defendant had prevailed.

Other factors mentioned by the District Court also support the choice it made. Judge Alsop, who ruled on the motion for partial summary judgment, had tried the *Strempke* case himself. He was intimately familiar with the proceedings therein, and he took the view that the *Strempke* verdict was ambiguous. The verdict, for example, did not specify which of several possible types of negligence the jury had found. An estoppel should be reasonably certain, and if there is a serious ambiguity as to what the previous court or jury decided, it is unfair to deny a party its right to contest the merits of the question in the instant case. Collateral estoppel applies only to issues of fact or law necessarily decided. See *Hardy v. Johns-Manville Sales Corp.*, 681 F.2d 334, 345 (5th Cir.1982). We defer to Judge Alsop's familiarity with and construction of the verdict and judgment in the *Strempke* case.

Finally, the District Court properly observed that application of offensive collateral estoppel in the present situation would not necessarily promote judicial economy. See *Parklane Hosiery*, 439 U.S. at 329–30, 99 S.Ct. at 650–51. Even if collateral estoppel were invoked here, little court time would be saved, because most plaintiffs, including Setter, claim punitive damages in Dalkon Shield cases, and the same facts, or most of them, that would have been relevant on the issue of liability would still have to come in and be considered by the court or jury on the issue of exemplary damages.

In short, there was no abuse of discretion in the District Court's refusal to preclude Robins from litigating the question of liability against Setter. Nor have we found any reversible error in the conduct of the trial. The judgment of the District Court is therefore

Affirmed.[4]

---

4. We note the introduction in the last Congress of at least two bills designed to solve some of the problems of mass tort litigation. H.R. 4159, 98th Cong., 1st Sess., introduced on October 19, 1983, by Representative Kastenmeier of Wisconsin, would have amended 28 U.S.C. § 1407 to permit consolidation of multidistrict litigation for trial of the question of liability, as well as for pretrial proceedings, as presently authorized by law. And S. 2260, 98th Cong., 2d Sess., introduced by Senator Specter of Pennsylvania on February 7, 1984, would have made similar provision for consolidated trial of antitrust cases. Both of these bills died in committee with the adjournment of the 98th Congress. Whether Congress adopts these or similar solutions to the problems of mass tort litigation is, of course, its business, not ours, but we are encouraged that the problem is being discussed by the people's elected representatives. A fair system providing for one trial of the question of liability, with the result binding on both sides, has much to commend it. Such a procedure now exists under 28 U.S.C. § 1407(h) for *parens patriae* actions brought under the Hart-Scott-Rodino Antitrust Improvements Act, § 4C of the Clayton Act, 15 U.S.C. § 15c.