_____

No. 95-2965
_____

Berger Transfer & Storage,            *
                                      *
                                      *
          Plaintiff - Appellee,       *
                                      *
      v.                              *
                                      *
Central States, Southeast and         *
Southwest Areas Pension Fund;         *
Central States, Southeast and         * Appeal from the United States
Southwest Areas Health and            * District Court for the
Welfare Fund; Marion Winstead,        * District of Minnesota.
Trustee of said Funds; Robert         *
Sansone, Trustee of said Funds;       *
R. Jerry Cook, Trustee of said        *
Funds; Harold D. Leu, Trustee of*
said Funds; Howard McDougall,         *
Trustee of said Funds; Robert         *
Baker, Trustee of said Funds;         *
R. V. Pulliam, Trustee of said        *
Funds; Arthur H. Bunte, Jr.,     *
Trustee of said Funds,                *
                                      *
          Defendants - Appellants.*


_____

              Submitted:  March 14, 1996

                 Filed:  June 18, 1996
_____

Before FAGG, JOHN R. GIBSON, and WOLLMAN, Circuit Judges.

_____

JOHN R. GIBSON, Circuit Judge.

The Central States, Southeast and Southwest Areas Pension and Health and Welfare Funds appeal the district court's[1] judgment in favor of Berger Transfer and Storage. The Funds appeal the court's decision that the owner-operators driving for Berger Transfer are independent contractors. The Funds argue that the district court erred in applying the common-law test for determining independent contractor status, and in holding that issue preclusion did not prevent it from deciding this issue. The Funds also appeal the district court's holding that the Minnesota six-year statute of limitations applied. We affirm.

Berger Transfer, a trucking company, enters into "Contractor Operating Agreements" with owner-operators engaged in its long distance hauling. After the owner-operator leases his tractor to Berger Transfer, the company then executes a sublease to Allied Van Lines.

The collective bargaining agreement in effect between May 1982 and September 1988 required Berger Transfer to make pension contributions for its employees, first to the Minneapolis Employees Benefit Association and then to the Central States, Southeast and Southwest Areas Pension and Health and Welfare Funds.

Following an audit, the Funds determined that Berger Transfer had not made payments into the Funds on behalf of all owner-operators. The Funds demanded payment on behalf of these individuals, asserting that they were all employees. Berger Transfer filed this action for declaratory judgment, asking the district court to declare the owner-operators to be independent contractors, to enjoin the Funds from collecting contributions for these individuals, and to apply the Minnesota statute of limitations in the event the owner-operators were found to be

---

[1]The Honorable Richard H. Kyle, United States District Judge for the District of Minnesota.

employees.  The Funds counterclaimed, seeking to recover all contributions owed to it by Berger Transfer.

The district court granted partial summary judgment, holding that the six-year Minnesota statute of limitations applied.  Following a bench trial, the court held that the owner-operators were independent contractors, and entered judgment in favor of Berger Transfer.  The Funds appeal.

**I.**

The Funds argue that issue preclusion prevents the district court from deciding whether the Berger Transfer owner-operators were employees or independent contractors.  The funds argue that an earlier Minnesota workers' compensation decision, which held that a Berger Transfer owner-operator was an employee,[2] prevents relitigation of this issue.  See Hansford v. Berger Transfer, Findings and Order, OAH ID No. 080985, at 8 (Minn. Office of Admin. Hearings Workers Compensation Section May 2, 1991), aff'd as modified, 46 W.C.D. 303 (Minn. Workers' Comp. Ct. App. 1991), aff'd, 482 N.W.2d 225 (Minn. 1992).

The district court concluded that the factual issues in this case differed from those decided in the workers' compensation case.  The court ruled that the Funds had failed to introduce any evidence showing that Berger Transfer treated all of its owner-operators in the same manner as the owner-operator in the workers' compensation case.  The court noted that the Funds acknowledged that not all owner-operators were classified the same.  Thus, the court concluded that, while the findings in Hansford might provide evidence in this case, they did not prevent Berger Transfer from

---

[2]Berger Transfer did not challenge this finding among the several issues raised on appeal in that case.

litigating the question of whether all owner-operators, as a group, were employees or independent contractors.

The Funds ask us to reverse the district court's decision not to apply offensive nonmutual issue preclusion to prevent litigation of the employee-independent contractor question in this case.  See Setter v. A.H. Robbins Co., 748 F.2d 1328, 1330 (8th Cir. 1984) (discussing the parameters of offensive nonmutual issue preclusion).[3]  We reverse the district court's decision not to apply offensive nonmutual issue preclusion only for an abuse of discretion.  Id.

> Before [issue preclusion] will bar relitigation of a factual issue in a subsequent proceeding, the prior determination must satisfy a four-part test:
>
> > (1)   the issue sought to be precluded must be the same as that involved in the prior action;
> > (2)   the issue must have been litigated in the prior action;
> > (3)   the issue must have been determined by a valid and final judgment; and
> > (4)   the determination must have been essential to the prior judgment.
>
> The party asserting [issue preclusion] bears the burden of proving that a prior decision satisfies all four elements of the test.  If the party against whom the earlier decision is being asserted did not have a full and fair opportunity to litigate the issue in question [issue preclusion] does not apply.

Farmland Indus. v. Morrison-Quirk Grain, 987 F.2d 1335, 1339 (8th Cir. 1993) (internal citations omitted) (quoting Johnson v. Miera (In re Miera), 926 F.2d 741, 743 (8th Cir. 1991)).

---

[3]The issue preclusion requested is nonmutual because the Funds were not a party in the workers' compensation case.  See Setter, 748 F.2d at 1330.  It is offensive, because the Funds seek to impose liability on Berger Transfer by preventing the company from litigating an issue decided against it in the previous workers' compensation case.  Id.

Only when a party has had a full and fair opportunity to litigate an issue in the first proceeding do "the benefits of preclusion outweigh the countervailing due process concerns present whenever a party is estopped from raising a claim." Simmons v. O'Brien, 77 F.3d 1093, 1095-96 (8th Cir. 1996). If application of offensive issue preclusion would be unfair to a defendant, a trial judge should not allow the use of offensive issue preclusion. Parklane Hosiery Co. v. Shore, 439 U.S. 322, 331 (1979). When the defendant has little incentive to defend vigorously in the first suit, later application of offensive nonmutual issue preclusion may be inappropriate. See id. at 330.

As the district court stated, the Funds made no effort to show that the status of all Berger Transfer owner-operators was identical to that of the owner-operator in the workers' compensation case. Further, the workers' compensation case involved a single injured owner-operator in an entirely different legal setting. We are convinced that it would be unfair to extend the finding in the workers' compensation case to this ERISA case. See Parklane Hosiery Co., 439 U.S. at 331; De La Fuente v. Stokley- Van Camp, Inc., 713 F.2d 225, 234 (7th Cir. 1983) (refusing to apply offensive issue preclusion when the first case offered little incentive to contest the issue of whether the defendant was a farm labor contractor). The district court did not abuse its discretion in refusing to apply offensive nonmutual issue preclusion here.

**II.**

The parties disagree regarding the standard of review that we must apply to the ruling that the owner-operators are independent contractors. Berger argues that this is a question of fact to be reviewed under the clearly erroneous standard, relying on Sargent v. Commissioner, 929 F.2d 1252, 1254 (8th Cir. 1991) (stating that in tax cases, employer-employee relationship is a mixed question of law and fact to be reviewed under the clearly erroneous standard).

We believe that the context in which Sargent arises limits its applicability to this case.

In Short v. Central States, Southeast & Southwest Areas Pension Fund, 729 F.2d 567, 571 (8th Cir. 1984), we stated that "[w]hether a given individual is an employee or independent contractor is a question of law, which must be decided by reviewing the particular facts of each case." We then looked to the common-law test for distinguishing employees from independent contractors, relying primarily on the enumeration of factors in the Restatement (Second) of Agency, § 220 (1957). Id. at 572. We balanced these factors to reach the ultimate legal conclusion as to whether the owner-operators were employees or independent contractors. No specific attack was made on the factors weighed to reach the ultimate conclusion in the case, so it was unnecessary to state whether the particular factual issues being weighed would, if attacked, be reviewed as questions of law or questions of fact.

It is evident that the district court's findings underlying each of the common-law factors are factual findings, while the ultimate conclusion as to whether an individual is an employee or an independent contractor is a question of law. The standard of review has been well expressed as follows:

> The existence and degree of each factor is a question of fact while the legal conclusion to be drawn from those facts-- whether workers are employees or independent contractors--is a question of law. Thus, a district court's findings as to the underlying factors must be accepted unless clearly erroneous, while review of the ultimate question of employment status is de novo.

Dole v. Snell, 875 F.2d 802, 805 (10th Cir. 1989) (deciding employee-independent contractor status under Fair Labor Standards Act) (quoting Brock v. Superior Care, Inc., 840 F.2d 1054, 1059 (2d Cir. 1988)); see also Henderson v. Inter-Chem Coal Co., 41 F.3d 567, 571 (10th Cir. 1994); Martin v. Selker Bros., Inc., 949 F.2d

-6-

1286, 1292 (3d Cir. 1991); Waxman v. Luna, 881 F.2d 237, 240 (6th Cir. 1989).

Some years after we decided Short, the Supreme Court held that a common-law test should be applied to determine who qualifies as an employee under ERISA. Nationwide Mutual Insurance Co. v. Darden, 503 U.S. 318, 323-24 (1992). The Court instructed:

> In determining whether a hired party is an employee under the general common law of agency, we consider the hiring party's right to control the manner and means by which the product is accomplished. Among the other factors relevant to this inquiry are the skill required; the source of the instrumentalities and tools; the location of the work; the duration of the relationship between the parties; whether the hiring party has the right to assign additional projects to the hired party; the extent of the hired party's discretion over when and how long to work; the method of payment; the hired party's role in hiring and paying assistants; whether the work is part of the regular business of the hiring party; whether the hiring party is in business; the provision of employee benefits; and the tax treatment of the hired party.

Id. (quoting Community for Creative Non-Violence v. Reid, 490 U.S. 730, 751-52 (1989) (footnotes omitted)). As the district court recognized, "[s]ince the common-law test contains `no shorthand formula or magic phrase that can be applied to find the answer, . . . all of the incidents of the relationship must be assessed and weighed with no one factor being decisive.'" Id. at 324 (quoting NLRB v. United Ins. Co. of Am., 390 U.S. 254, 258 (1968)).

The district court recognized that the proper inquiry was the hiring party's right to control the manner and means by which a task is accomplished. The court then balanced the Darden factors on each side of the employee-independent contractor question to reach its conclusion.

The court noted that the owner-operator agreement specifically provided that the owner-operator was responsible for determining the means used to provide transportation services to Berger Transfer. The owner-operators were responsible for hiring and supervising drivers and other workers, loading and unloading the trucks, purchasing and maintaining the leased equipment, paying operating expenses such as fuel and repairs, and paying workers' compensation and withholding employment taxes for drivers.

The district court also found that the owner-operators possessed "considerable autonomy regarding when and how long they would work." For example, owner-operators could refuse to take trip assignments, and they frequently refused assignments offered by the company dispatcher. They were not penalized for refusing a trip, but were instead offered another assignment. In addition, the company paid the owner-operators a percentage of the revenue from each trip, and the owner-operators were not on Berger Transfer's payroll. The company reported the owner-operators' income to the Internal Revenue Service on Form 1099, instead of on Form W-2 which is used to report employee earnings.

The district court next examined the nature of Berger Transfer's control over the leased tractor and the owner-operator. The court noted that because federal regulations required exclusive contract language in the Contractor Operating Agreement, it was necessary to look at the actual nature of the relationship to determine the extent of Berger Transfer's control. The court found that it was not uncommon for owner-operators to make trips for other carriers, as often as once or twice a month. The court also noted that although Berger Transfer may have stated that owner-operators were required to paint their trucks in Allied Van Lines colors and wear Allied uniforms, in practice they were not required to do so. Further, owner-operators were required to pay for the license obtained by Berger Transfer. The court concluded its findings by stating that the Funds had produced no evidence of

restrictions on the owner-operators' personal use of their tractors, or on soliciting business from other brokers. The record failed to show that Berger Transfer had ever unilaterally terminated an owner-operator or retained control of a tractor after the owner-operator wished to no longer drive for the company.

The Funds argue that the district court erred in its analysis because it is the existence of the right to control, not the exercise of that right which is determinative of employee or independent contractor status. Darden, 503 U.S. at 323, establishes the fundamental inquiry as whether the hiring party has the "right to control the manner and means by which the product is accomplished." In so deciding, we must consider the common-law factors and assess "all of the incidents of the relationship . . . with no one factor being decisive." Id. at 324 (quoting United Ins. Co. of Am., 390 U.S. at 258). The district court recognized these principles in its opinion, and we believe that they were properly applied throughout. Further, the district court's findings of fact regarding the relationship between Berger Transfer and the owner-operators were not clearly erroneous.

The Funds rely on Yeldell v. Tutt, 913 F.2d 533, 541-42 (8th Cir. 1990), which dealt with a jury instruction submitting the question of the existence of a master-servant relationship to the jury. Yeldell has limited applicability to the issues before us. It is the actual nature of the relationship that is determinative. Yeldell, 913 F.2d at 542. "Self-serving statements concerning how an individual is characterized, unrelated and unsupported by the actual working relationship, fall[ ] well short of the mark." Richardson v. Central States, Southeast & Southwest Areas Pension Fund, 645 F.2d 660, 663 (8th Cir. 1981).

Darden sets out a nonexhaustive list of factors for a district court to consider in its analysis. See Darden, 503 U.S. at 324; Loomis Cabinet Co. v. Occupational Safety & Health Review Comm'n,

20 F.3d 938, 942 (9th Cir. 1994). In its opinion, the district court expressly discusses the following <u>Darden</u> factors: the source of the instrumentalities or tools; the hired party's role in hiring and paying assistants; the extent of the hired party's discretion over when and how long to work; the method of payment; the tax treatment of the hired party; and the duration of the relationship between the parties. In addition, our review of the record makes it clear that the district court also considered the other relevant <u>Darden</u> factors, such as the skill required; the right to assign additional projects to the hired party; whether the work was part of the regular business of the hired party; and the provision of employee benefits. Following this detailed analysis, the court held that after "[v]iewing all of the factors presented by the evidence in this case," the owner-operators were not employees under the common-law test.

The Funds now argue that "the district court focused solely on the factors that it believed supported a finding that the owner-operators were independent contractors."

The Funds argue that the district court failed to consider that Berger Transfer had previously contributed into the Funds on behalf of four of its drivers, and later certified their employment status to allow them to begin collecting pensions. The Funds consider this a significant admission by Berger Transfer that the owner-operators are actually employees.[4] Berger Transfer flatly denies that it made contributions on behalf of these owner-operators. The company explains that the owner-operators made these contributions themselves, as part of a grandfather agreement

---

[4]On several occasions during the life of the pension plans, non-employee owner-operators made self-contributions into the Funds. When these individuals were discovered, the Funds would refund the amount of the ineligible contributions. At least two of these refunds involved claims of individuals associated with Berger Transfer.

in existence since 1958.[5]  The district court made no findings regarding these issues.[6]

The Funds also argue that because Berger Transfer provided training programs and assessed penalties for violating company rules, we should find that the owner-operators are employees.  Further, the Funds believe that the integration present between the operations of Berger Transfer and the owner-operators establishes the existence of an employer-employee relationship.  The Funds argue that the owner-operators are responsible for the entire long haul operation of Berger Transfer, which is atypical of the usual supplemental nature of the work performed by independent contractors.  In addition, Berger Transfer received revenue when

---

[5]At trial, the president of Berger Transfer testified that a grandfather agreement existed, allowing some owner-operators to contribute to the plan on their own behalf.  He indicated that he had been informed that an employee who was covered by the plan in 1958 could continue to make self-contributions to the plan after becoming an independent contractor.  He testified that he was told to simply list that individual as an employee on the company's contribution sheet, make the contribution on behalf of the individual, and then deduct the contribution from that person's earnings.  This was the method followed in submitting the four individuals' self-contributions under what he believed the grandfather agreement to be.

In a 1976 letter to employers, which addressed the ongoing problem of owner-operator self-contributions, the plan administrator explained the Funds understanding of the 1958 exception as follows:

> As a general rule, no self-contributions are permitted.
>
> In 1958, there existed in the Household Goods section a specific problem, which was resolved by agreement between the Union and Employers which provided that drivers then employed by a participant, who purchased a truck from the employer or elsewhere and continued to operate for that employer, could make self-contributions.

[6]The status of these individuals and their continued right to receive pension payments are not properly before us, and we decline to address this question on the basis of the record before us.

the owner-operators performed work directly for Allied, which the Funds assert would not be the case if the owner-operators were independent contractors.

We have carefully considered each of these arguments in our decision. Under Darden, these are facts to be weighed with all of the other evidence in the record in reaching a conclusion on the employee-independent contractor issue. While some of these facts may favor employee status, they do not compel such a conclusion. Certainly, in our weighing of the evidence, they do not tip the scale in that direction.

Finally, the core of the Funds' argument is that the district court erred in its conclusion, because this case is indistinguishable from Short, 729 F.2d at 567-74, which also decided if owner-operators were employees under ERISA. The panel in Short, 729 F.2d at 573-74, also applied the common-law test with many of the factors being the same as here. As the district court noted, the panel in Short found the existence of an exclusive contract a significant factor in the common-law analysis. Short, 729 F.2d at 574 (discussing Munts v. Fitzsimmons, 323 N.E.2d 153 (Ill. App. Ct. 1975)). In Short, 729 F.2d at 574, both drivers "operated under exclusive contracts and each drove for their employers for several years." Here, the district court found that the owner-operators would sometimes drive for other companies. We believe this to be a key distinction between this case and Short. See Short, 729 F.2d at 574 (noting that the existence of an exclusive contract becomes "crucial when the factor of exclusive employment is weighed with the other factors indicating employee status and against the factors indicating independent contractor status"). While Short provides an excellent framework for our analysis, the result must be distinguished on its facts.

Having carefully reviewed the record and "all of the incidents of the relationship," Darden, 503 U.S. at 323, between Berger

-12-

Transfer and the owner-operators, we conclude that the district court did not err in holding that the owner-operators are independent contractors. We affirm the judgment of the district court.  Since we conclude that the owner-operators were independent contractors, we need not reach the statute of limitations question.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.