# United States Bankruptcy Appellate Panel
## FOR THE EIGHTH CIRCUIT

_____

No. 12-6028
_____

|  |  |  |
|---|---|---|
| In re: | * | |
| | * | |
| Mark Swanson, | * | |
| | * | |
| Debtor. | * | |
| _____ | * | |
| | * | Appeal from the United States |
| Daniel M. McDermott, United States | * | Bankruptcy Court for the |
| Trustee, | * | District of Minnesota |
| | * | |
| Plaintiff – Appellee | * | |
| | * | |
| v. | * | |
| | * | |
| Mark Swanson, | * | |
| | * | |
| Defendant – Appellant | * | |

_____

Submitted: July 20, 2012
Filed: August 17, 2012
_____

SCHERMER, VENTERS and NAIL, Bankruptcy Judges

_____

VENTERS, Bankruptcy Judge.

The Debtor, Mark Swanson, appeals from the decision of the bankruptcy court granting the United States Trustee's motion under Fed. R. Bank. P. 8012 and

Fed. R. Civ. P. 12(c) for judgment on the pleadings in an action to deny the Debtor's discharge under 11 U.S.C. § 727(a)(3) and (a)(5). For the reasons stated below, we reverse the bankruptcy court's decision and remand the case for further proceedings consistent with this opinion.

## BACKGROUND

Because this is an appeal of a judgment on the pleadings, the record is limited to the United States Trustee's Complaint, the Debtor's Answer, and the bankruptcy court docket.

The Debtor filed for protection under Chapter 7 of the Bankruptcy Code on June 27, 2011. On February 17, 2012, the United States Trustee ("UST") filed a complaint seeking a denial of the Debtor's discharge under 11 U.S.C. § 727(a)(3) and (a)(5) based on the Debtor's alleged failure to maintain adequate financial records and to satisfactorily explain a loss of assets. The Debtor filed an answer to the Complaint on March 16, 2012. The substantive admissions in the Answer were limited to the following:[1]

1. The Debtor was the owner and chief executive office of a company called Shipco, Inc., from 2001 until March 15, 2011. Between 2003 and 2006, an individual named Kristian Shaw maintained a 25% ownership interest in Shipco.
2. On July 9, 2010, a state court-appointed receiver for Minnesota Print Services, Inc. ("MPS") and Gerard F. Cellette, Jr. filed a complaint in state court[2] against Shipco, Inc., Mark Swanson, and Myndi Swanson (presumably the Debtor's wife).
3. On November 19, 2010, Shipco and the Swansons filed a third-party complaint against Shaw, the minority owner.

---

[1] The Debtor also admitted several less germane matters, such as the date he filed his bankruptcy petition, that he's a resident of Minnesota, etc.

[2] The District Court for Ramsey County, Minnesota, Second Judicial District.

4. On May 25, 2011, the state court entered a $174,850 judgment against the Debtor, Myndi Swanson, and Shipco, jointly and severally. The state court found that the defendants' "profits" from their investments in a Ponzi scheme (run by MPS and Cellette) constituted fraudulent transfers pursuant to Minn. Stat. § 513.44(a).

5. On December 22, 2011, the UST requested from the Debtor "copies of any and all documents that evidence the disposition of the $174,850 in profits received by your client in connection with the MPS Ponzi scheme. . . ."

6. The Debtor did not produce any documents in response to the UST's inquiry because, according to the Debtor, he only profited $15,000 from his transactions with Cellette and MPS.

The Debtor supplemented these admissions with an "Affirmative Defense" consisting of checks and bank statements showing payments made to Cellette by the Swansons and Shipco and payments from Cellette and MPS to Shipco and the Debtor. According to these documents and an accompanying explanation, the Debtor wrote $110,000 in checks to Cellette and received $123,000 in checks (or wire transfers) and $12,000 in cash from Cellette. The rest of the transfers evidenced by these documents showed payments to and from Shipco ($230,000 to Cellette and $310,000 from Cellette).

Notably, the Debtor denied in his Answer that he failed to keep records of his investments with Cellette and MPS, denied that his records were insufficient to ascertain his financial condition or business transactions, and denied that any inadequacy in his records was not justified.

On March 21, 2012, the Trustee filed a motion for judgment on the pleadings under Fed. R. Bank. P. 7012 and Fed. R. Civ. P. 12(c). The bankruptcy court held a hearing on the Trustee's motion on April 18, 2012, and orally granted the Trustee's motion. Later that day, the bankruptcy court issued an order

containing its findings of fact and conclusions of law denying the Debtor's discharge under § 727(a)(3) and (a)(5). The Debtor timely appealed.

## STANDARD OF REVIEW

We review a grant of judgment on the pleadings *de novo*.[3] In determining whether to grant judgment on the pleadings in the first instance, a court must accept as true all facts pleaded by the non-moving party and draw all reasonable inferences in its favor.[4] Allegations in a complaint which are denied by the non-movant are assumed to be false.[5] When considering a motion for judgment on the pleadings, a court generally must ignore materials outside the pleadings, but it may consider materials that are part of the public record,[6] as well as materials that are necessarily embraced by the pleadings.[7] After determining the facts in this fashion, the movant is entitled to judgment on the pleadings only if those facts "clearly establish that no material issue of fact remains to be resolved and he is entitled to judgment as a matter of law."[8]

Applying these standards to the UST's motion for judgment on the pleadings in this case, the motion should have been denied.

---

[3] *See Clemons v. Crawford*, 585 F.3d 1119, 1124 (8th Cir. 2009); *In re Marble*, 426 B.R. 316, 318 (B.A.P. 8th Cir. 2010).

[4] *See Faibisch v. University of Minnesota*, 304 F.3d 797, 803 (8th Cir. 2002); *In re Marble*, 426 B.R. at 318.

[5] *See Hal Roach Studios, Inc. v. Richard Feiner and Co., Inc.*, 896 F. 2d 1542, 1550 (9th Cir. 1990); *Austad v. U.S.*, 386 F.2d 147, 150 (9th Cir. 1967). *See also Beal v. Missouri Pac. R. R. Corp.*, 312 U.S. 45, 51, 61 S.Ct. 418, 421 (1941) (On a plaintiff's motion on the pleadings, "denials and allegations of the answer which are well pleaded must be taken as true.").

[6] *See Missouri ex rel. Nixon v. Coeur D'Alene Tribe*, 164 F.3d 1102, 1107 (8th Cir. 1999).

[7] *See Piper Jaffray Cos. v. National Union Fire Ins. Co.*, 967 F.Supp. 1148, 1152 (D. Minn. 1997).

[8] *See Iowa Beef Processors, Inc. v. Amalgamated Meat Cutters*, 627 F. 2d 853, 855 (8th Cir. 1980).

**DISCUSSION**

**A.     The pleadings contain insufficient facts to deny the Debtor's discharge under 11 U.S.C. § 727(a)(3).**

The provisions of § 727 must be strictly construed in a debtor's favor.[9] To prevail under § 727(a)(3), a party seeking the denial of the debtor's discharge must establish that a debtor has "concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the Debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case. . . ."[10] Once that party has shown that the debtor's records are inadequate, the burden of production shifts to the debtor to offer a justification for his record keeping (or lack thereof); however, the objecting party bears the ultimate burden of proof with respect to all elements of this claim.[11]

The pleadings here, *i.e.*, the Complaint and Answer, do not support a judgment as a matter of law under § 727(a)(3). Specifically, they fail to establish that the Debtor's records were insufficient or that any deficiencies in his records were unjustified under the circumstances of the case. Quite simply, the UST alleged these elements of his cause of action, the Debtor denied them in his Answer, and allegations in a complaint which are denied by the non-moving party (*i.e.*, the Debtor) are assumed to be false.[12]

---

[9] *In re Korte*, 262 B.R. 464, 471 (B.A.P. 8th Cir. 2001).

[10] *Id.*

[11] *See First Federated Life Ins. Co. v. Martin* (*In re Martin*), 698 F.2d 883, 887 (7th Cir. 1983). *See also In re Sendencky*, 283 B.R. 760, 764 (B.A.P. 8th Cir. 2002) (referring to a shift in the burden of "production," as opposed to a shift in the burden of proof).

[12] *See infra* n. 4.

The UST argues that it was "incumbent" on the Debtor to provide in his Answer records sufficient to ascertain his business transactions (presumably with Cellette and MPS) or a justification for his (alleged) failure to maintain sufficient records in light of the Debtor's admission that he had received a significant amount of cash from Cellette. This argument misapplies the burdens of proof and production associated with § 727(a)(3).

Under § 727(a)(3), a debtor's burden to show that his record keeping was reasonable under the circumstances is triggered only after the party seeking to deny his discharge establishes that inadequate records exist. That burden was never triggered here. The Complaint alleged that the Debtor's records are inadequate, but as noted above, the Debtor denied that allegation. Therefore, that allegation has not been proved. And the fact that the Debtor did not previously provide documents to the UST pursuant to his request does not constitute an admission that he has no such documents, especially considering that all inferences are to be drawn in favor of – not against – the non-moving party on a motion for judgment on the pleadings. The Debtor stated that he didn't supply any records to the UST because the UST's request was premised on a fact the Debtor disputes, *i.e.*, that he received $174,850 in profits from Cellette. That explanation should have been accepted as true and satisfactory for purposes of the UST's motion for judgment on the pleadings.

Even if the Debtor admitted (or the state-court judgment established)[13] that he lacked sufficient records, he still was under no duty to come forward *in his Answer* with a justification for the lack or insufficiency of his records. Contrary to the UST's contention, the Debtor's obligation to come forward with a justification for insufficient records is not an affirmative defense, in the technical sense,[14] which

---

[13] As discussed below, the state-court judgment does not collaterally estop the Debtor from denying that he lacks sufficient business records.

[14] We recognize that several courts have referred to a debtor's justification for a paucity of records as an "affirmative defense," but none have done so with

would be waived if not adequately pled.[15] While the burden of production under § 727(a)(3) does, indeed, shift to a debtor to justify a lack of records, the lack of a justification remains an essential element of the objecting party's case. "[I]f the defense involved is one that merely negates an element of the plaintiff's prima facie case, it is not truly an affirmative defense and need not be pleaded."[16]

Thus, we conclude that the pleadings do not establish all of the elements necessary to deny the Debtor's discharge under 11 U.S.C. § 727(a)(3). Accordingly, judgment on the pleadings on that claim should have been denied.[17]

**B.     The pleadings contain insufficient facts to deny the Debtor's discharge under 11 U.S.C. § 727(a)(5).**

To prevail under § 727(a)(5), the party seeking the denial of the debtor's discharge must establish that a debtor has "failed to explain satisfactorily . . . any loss of assets or deficiency of assets to meet the Debtor's liabilities. . . ."[18] Similar in operation to § 727(a)(3), a debtor's burden (of production) to explain the loss of assets is not triggered until the plaintiff establishes that an actual loss of assets has occurred.[19]

The UST's motion for judgment on the pleadings on his § 727(a)(5) claim fails for essentially the same reason the UST's § 727(a)(3) claim fails: the Debtor

---

reference to pleading requirements. *See e.g.*, *In re Scott*, 172 F.3d 959, 971 (7th Cir. 1999)

[15] Fed. R. Civ. P. 8, incorporated by Fed. R. Bankr. P. 7008, requires that "In responding to a pleading, a party must affirmatively state any avoidance or affirmative defense[.]" "Generally, failure to plead an affirmative defense results in a waiver of that defense."

[16] *Sanden v. Mayo Clinic*, 495 F.2d 221, 223-24 (8th Cir. 1974)(quoting 2A J. Moore, Moore's Federal Practice P8.27(2), at 1843 (2d ed. 1974)).

[17] *In re Marble*, 426 B.R. at 318.

[18] 11 U.S.C. § 727(a)(5).

[19] *In re Vilhauser*, 458 B.R. 511, 514 (B.A.P. 8th Cir. 2011).

7

denied essential elements of the claim, and the burden of producing a justification for any alleged loss of assets never shifted to the Debtor.

The UST's complaint alleges that the Debtor lost $514,850, including $174,850 that the State court allegedly found he received from Cellette. However, the Debtor denied that he received those funds, that he lost any of those funds, and that he did not have a satisfactory explanation for any loss of those funds which might have occurred. And the Debtor's "Affirmative Defense" does not undermine or prevent the Debtor from making these denials. Therefore, the UST's allegations are considered false and the Debtor's denials are accepted as true.

The Debtor's Affirmative Defense demonstrates that the Debtor received a total of $135,000 from Cellette, only $25,000 more than he paid Cellette. The other payments referenced in the Debtor's Answer appear to have been received by Shipco, a non-debtor, and there has been no proof (or allegation) that the Debtor is Shipco's alter ego.

The Trustee argues that the Debtor cannot now contend that Shipco received the rest of the transfers shown in the Affirmative Defense because the Debtor did not make such a distinction in his description of the attached exhibits, stating that "he" (*i.e.*, Mark Swanson) received each transfer. While we acknowledge that the description of the exhibits differs from what is shown on the face of the exhibits, on a motion for judgment on the pleadings, the non-movant (the Debtor) is entitled to have all inferences drawn in his favor. Therefore, for purposes of a motion for judgment on the pleadings, it should have been inferred that the entity noted on the face of the checks from Cellette, *i.e.*, Shipco, a non-debtor, received the bulk of the payments from Cellette.

More important, however, is that the UST's Complaint doesn't ever actually allege that any of the funds received from Cellette by the Debtor or Shipco were

lost; it states only that the Debtor failed to satisfactorily explain "the loss of $514,850." The Debtor denied these implicit allegations of loss as well.

Having denied – and thereby disproved for purposes of a motion on the pleadings – that the Debtor lost $514,850, the burden of coming forward with an explanation for the loss of those funds never shifted to the Debtor. Thus, the lack of such an explanation cannot support a judgment on the pleadings under § 727(a)(5).

For these reasons, the pleadings do not establish all of the elements of the Trustee's claim under § 727(a)(5), and judgment on the pleadings on that claim should have been denied accordingly.[20]

## C. Collateral Estoppel does not bar the Debtor from denying the UST's Allegations.

The UST argues (and the bankruptcy court commented in its oral ruling)[21] that the state-court judgment against the Debtor collaterally estops him from "flatly" denying that he kept no records of his transactions with Cellette or that he received $514,850 from him. The state-court judgment does not have this preclusive effect.

As an initial matter, we note that it would be unfair, if not altogether improper, to permit the UST to rely on collateral estoppel to establish elements of his denial of discharge claims, when he did not raise it in his motion for judgment on the pleadings. Putting that reservation aside, however, collateral estoppel is still not a viable basis upon which to base a judgment on the pleadings here.

---

[20] *In re Marble*, 426 B.R. at 318.

[21] The bankruptcy court did not cite collateral estoppel as a basis for its decision in its written judgment.

The state court judgment was rendered by a Minnesota court, so Minnesota preclusion law applies.[22] In Minnesota, a party is estopped from re-litigating an issue where: (1) the issue is identical to one in a prior adjudication; (2) there was a final judgment on the merits; (3) the party seeking reconsideration of the issue was a party or in privity with a party to the prior adjudication; and (4) that party was given a full and fair opportunity to be heard on the adjudicated issue.[23] Only those issues actually and necessarily decided in the first suit may have preclusive effect in a subsequent action.[24]

The state court's finding that the Debtor kept no records of his investments with Cellette and MPS does not bar the Debtor from denying that he has insufficient records at this stage of the litigation. Minn. Stat. § 513.44(a) – the statute upon which the state court judgment is based – does not require a finding that a defendant failed to keep business records, and there is no indication that the state court relied on that fact in its decision.[25]

And the state court's purported finding that the Debtor received $174,850 in profits from Cellette and MPS does not bar the Debtor from denying that he received those profits because the state court judgment does not indicate whether the Debtor personally received any profits; the judgment was rendered jointly and severally against Mark Swanson, Myndi Swanson, and Shipco. In other words, the issue decided in the prior litigation is not identical to the issue here nor was it

---

[22] 28 U.S.C. § 1738; *In re Moretto*, 440 B.R. 534, 538 (B.A.P. 8th Cir. 2010).

[23] *See Nelson v. American Family Ins. Group*, 651 N.W.2d 499, 511 (Minn.2002).

[24] *See Brown v. Felsen*, 442 U.S. 127, 139 n. 10, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979) ("Whereas res judicata forecloses all that which might have been litigated previously, collateral estoppel treats as final only those questions actually and necessarily decided in a prior suit.").

[25] *Setter v. A.H. Robins Co., Inc.*, 748 F.2d 1328, 1331 (8th Cir. 1984) ("An estoppel should be reasonably certain, and if there is a serious ambiguity as to what the previous court or jury decided, it is unfair to deny a party its right to contest the merits of the question in the instant case.").

actually determined by the state court.[26] Therefore, to the extent the UST's motion was granted on the basis of collateral estoppel, that basis is specifically reversed as well.

## CONCLUSION

For the foregoing reasons, the judgment of the bankruptcy court is reversed, and the case is remanded for further proceedings consistent with this decision.

_____

---

[26] *Id.*