**John E. COONLEY, as Trustee of the James E. Coonley II Trust, and ABCM Corporation, Plaintiffs,**

**v.**

**FORTIS BENEFIT INSURANCE COMPANY, Defendant.**

**No. C 95–3077–MWB.**

United States District Court,
N.D. Iowa,
Central Division.

Jan. 21, 1997.

---

Mark L. Tripp, Cynthia A. Hurley, argued, Bradshaw, Fowler, Proctor & Fairgrave, P.C., Des Moines, IA, for Plaintiffs.

Paula Weseman Theisen, argued, Weseman Theisen Law Office, Minneapolis, MN, Kasey Kincaid, Faegre & Benson, Des Moines, IA, for Defendant.

### MEMORANDUM OPINION AND ORDER REGARDING CROSS–MOTIONS FOR SUMMARY JUDGMENT

BENNETT, District Judge.

## TABLE OF CONTENTS

I.   INTRODUCTION .................................................843

II.  STANDARDS FOR SUMMARY JUDGMENT ..............................843

III. FINDINGS OF FACT............................................845

IV.  LEGAL ANALYSIS .............................................848
   A.  Principles of Interpretation of ERISA Plans ............848
      1.  Standard of review.................................848
      2.  Applicable law.....................................849
      3.  Rules of interpretation ...........................850
   B.  Who Is Covered By This ERISA Plan?.....................851
      1.  Clear and unambiguous language ....................851
      2.  Dictionary meaning ................................852
         a.  "Dictionary" definition .......................852
         b.  Ambiguity......................................853
      3.  Common-law factors ................................855
         a.  Applicability of the common-law test...........855
         b.  The test and standard of review ...............857
         c.  Application of the common-law factors .........858

V.   CONCLUSION .................................................860

Who is trying to have it both ways in this ERISA benefits action pursuant to 29 U.S.C. § 1132? Is it the corporate policyholder of an employee life insurance policy that treated the corporation's secretary as a non-employee for tax purposes, but now wants life insurance benefits upon the death of the secretary on the ground that he was an "employee"?

Or is it the insurance company that accepted premiums for employee life insurance coverage, but now denies that an obviously key individual in the corporation was an "employee" when he died? Can the court answer any of these questions as a matter of law on cross-motions for summary judgment? These are some of the vexing questions the court must resolve to rule on dispositive motions pending in this matter.

## I. INTRODUCTION

The plaintiffs in this action, John E. Coonley (the Trustee), the successor trustee of the James E. Coonley II Trust (the Trust) and ABCM Corporation (ABCM), an Iowa corporation with its principal place of business in Hampton, Iowa, filed their complaint in this matter on September 27, 1995, against defendant Fortis Benefits Insurance Company (Fortis). Count I of the complaint is a civil action claiming life insurance benefits pursuant to the civil enforcement provisions of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(a)(1)(B). Count II is a civil claim for damages for breach of a life insurance contract between ABCM and Fortis. Fortis answered the complaint on October 26, 1995, denying both claims and asserting that the breach of contract claim is preempted by ERISA. This matter is currently set for a bench trial on May 28, 1997.

However, the parties contend that there is no need for a trial, because they have filed cross-motions for summary judgment which they assert will dispose of the entire action. At the extended deadline for dispositive motions requested by both sides, September 10, 1996, the plaintiffs and the defendant moved for summary judgment. On September 24, 1996, the Trustee and ABCM resisted Fortis's motion for summary judgment and Fortis resisted the plaintiffs' motion. The plaintiffs filed a reply brief in support of their motion for summary judgment on September 30, 1996. Each side asserts that there are no genuine issues of material fact and that, as a matter of law, its opponent's motion for summary judgment must be denied and its own motion granted.

The court heard oral arguments on the cross-motions for summary judgment on January 15, 1997. Plaintiffs ABCM Corporation and the Trustee of the James E. Coonley II Trust were represented by counsel Mark L. Tripp and Cynthia A. Hurley of Bradshaw, Fowler, Proctor & Fairgrave, P.C., in Des Moines, Iowa. Ms. Hurley presented the oral arguments on behalf of the plaintiffs. Defendant Fortis Benefits Insurance Company was represented by counsel Paula Weseman Theisen of the Weseman Theisen Law Office in Minneapolis, Minnesota, and by local counsel Kasey Kincaid of Faegre & Benson in Des Moines, Iowa. Ms. Weseman Theisen presented the oral arguments on behalf of the defendant. The court found both the briefs and oral arguments to be of an unusually high quality. The court was also impressed by the clarity and informativeness of the oral presentations and the cordiality with which counsel interacted with each other and with the court.

Although the plaintiffs concede that Coonley was paid for his work for ABCM through a professional corporation (PC), the theme of the plaintiffs' arguments for summary judgment is that Coonley was a "key" employee of ABCM in every respect, except possibly in form. The main thrust of Fortis's argument in resistance to the plaintiffs' motion for summary judgment and in support of its own motion for summary judgment, is that Coonley was not an "employee" under the applicable federal common law. Rather, applying federal common-law factors, Fortis asserts that Coonley was an independent contractor, not an employee, of ABCM and that Coonley was an "employee" only of his PC. Before it can address the merits of these arguments, the court must first consider the standards for summary judgment applicable in this case and the factual record upon which the motions for summary judgment are founded.

## II. STANDARDS FOR SUMMARY JUDGMENT

The Eighth Circuit Court of Appeals recognizes "that summary judgment is a drastic remedy and must be exercised with extreme care to prevent taking genuine issues of fact away from juries." *Wabun–Inini v. Ses-*

*sions,* 900 F.2d 1234, 1238 (8th Cir.1990). On the other hand, the Federal Rules of Civil Procedure have authorized for nearly sixty years "motions for summary judgment upon proper showings of the lack of a genuine, triable issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986). Thus, "summary judgment procedure is properly regarded not as a disfavored procedural short-cut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Wabun-Inini,* 900 F.2d at 1238 (quoting *Celotex,* 477 U.S. at 327, 106 S.Ct. at 2555; *Hartnagel v. Norman,* 953 F.2d 394, 396 (8th Cir.1992).

The standard for granting summary judgment is well established. Rule 56 of the Federal Rules of Civil Procedure states in pertinent part:

Rule 56. Summary Judgment

(a) For Claimant. A party seeking to recover upon a claim, counterclaim, or cross-claim or to obtain a declaratory judgment may, at any time after the expiration of 20 days from the commencement of the action or after service of a motion for summary judgment by the adverse party, move with or without supporting affidavits for a summary judgment in the party's favor upon all or any part thereof.

(b) For Defending Party. A party against whom a claim … is asserted … may, at any time, move for summary judgment in the party's favor as to all or any part thereof.

(c) Motions and Proceedings Thereon.... *The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.*

*Fed.R.Civ.P.* 56(b) & (c) (emphasis added); *see also Celotex,* 477 U.S. at 322–23, 106 S.Ct. at 2552–53; *Reliance Ins. Co. v. Shenandoah South, Inc.,* 81 F.3d 789, 791 (8th Cir.1996); *Beyerbach v. Sears,* 49 F.3d 1324, 1325 (8th Cir.1995); *Munz v. Michael,* 28 F.3d 795, 798 (8th Cir.1994); *Roth v. U.S.S. Great Lakes Fleet, Inc.,* 25 F.3d 707, 708 (8th Cir.1994); *Cole v. Bone,* 993 F.2d 1328, 1331 (8th Cir. 1993); *Woodsmith Publishing Co. v. Meredith Corp.,* 904 F.2d 1244, 1247 (8th Cir. 1990); *Wabun–Inini,* 900 F.2d at 1238 (citing *Fed.R.Civ.P.* 56(c)).

Ordinarily, analysis of a motion for summary judgment focuses on whether there are genuine issues of material fact that preclude summary judgment in the movant's favor,[1] because they require submission of the case to a trier of fact. *See, e.g., Celotex,* 477 U.S. at 323, 106 S.Ct. at 2553 (if the nonmoving party fails to make a sufficient showing of an essential element of a claim with respect to which it has the burden of proof, then the moving party is "entitled to judgment as a matter of law."); *Woodsmith,* 904 F.2d at 1247 (same). However, in the present case, both sides have moved for summary judgment on the ground that there are no genuine issues of material fact, although there may be some factual disputes, or disputes about the legal significance of undisputed facts, apparent from the cross-motions and the parties' statements of fact. Thus, the analysis in this case will focus on the final clause of the quoted portion of Rule 56(c), that is, whether *"the moving party is entitled to judgment as a matter of law,"* *Fed. R.Civ.P.* 56(c) (emphasis added), until and unless the court finds any factual dispute to be material under governing law.[2]

---

1. An issue of material fact is genuine if it has a real basis in the record. *Hartnagel,* 953 F.2d at 394 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986)). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Beyerbach,* 49 F.3d at 1326; *Hartnagel,* 953 F.2d at 394.

2. The court has considered in some detail the standards applicable to disposition of a motion for summary judgment when factual disputes are asserted to be material, most recently in *Heather K. v. City of Mallard, IA,* 946 F.Supp. 1373, 1376–79 (N.D.Iowa 1996); *Jones Distrib. Co., Inc. v. White Consol. Indus., Inc.,* 943 F.Supp.

Indeed, the parties specifically embrace such an approach, because each cites authority stating that primarily legal issues generally, contract interpretation questions specifically, and, even more specifically, interpretation of who is an "employee," are issues amenable to summary disposition. *See, e.g., Berger Transfer & Storage v. Central States, Southeast & Southwest Areas Pension Fund,* 85 F.3d 1374, 1377 (8th Cir. 1996) ("[W]e stated that '[w]hether a given individual is an employee or independent contractor is a question of law, which must be decided by reviewing the particular facts of each case,'" quoting *Short v. Central States, Southeast & Southwest Areas Pension Fund,* 729 F.2d 567, 571 (8th Cir. 1984)); *Mansker v. TMG Life Ins. Co.,* 54 F.3d 1322, 1326 (8th Cir.1995) (in an ERISA plan interpretation case, the court observed, "Where the unresolved issues are primarily legal rather than factual, summary judgment is particularly appropriate," citing *Crain v. Board of Police Comm'rs,* 920 F.2d 1402, 1405–06 (8th Cir.1990)); *Murphy v. Keystone Steel & Wire Co.,* 61 F.3d 560, 564–65 (7th Cir.1995) ("Summary judgment is particularly appropriate in cases involving the interpretation of contracts."); *Mumford v. Godfried,* 52 F.3d 756, 759 (8th Cir.1995) ("Where the unresolved issues are primarily legal rather than factual, summary judgment is particularly appropriate."); *McPeek v. Beatrice Co.,* 936 F.Supp. 618, 626 (N.D.Iowa 1996) (ERISA contract interpretation case before the court on summary judgment which quotes *Murphy,* 61 F.3d at 564–65). Thus, because the issues before the court are essentially legal and do not turn on the existence or non-existence of a genuine issue of material fact, summary disposition may be particularly appropriate.

## III. FINDINGS OF FACT

The record reveals that the following facts are undisputed. ABCM Corporation was in-

corporated in Iowa in June of 1973.[3] The corporation had four initial shareholders: Richard A. Allbee, its treasurer; Dr. B.K. Benge, its vice president; James E. Coonley II, its secretary; and George Manoylovich, its president. On July 7, 1973, the officers of ABCM executed a memorandum agreement which provided that each director would receive the same amount in director fees and each would receive the same "salary," with the exception that Mr. Manoylovich was to receive additional income as administrator of the Hampton Nursing Home and as supervisor of other administrators. Under the terms of an employment agreement with ABCM, also executed on July 7, 1973, Coonley was employed as secretary for ABCM for a term of thirty years, unless terminated sooner as the result of resignation, death, or retirement.

At the time ABCM was incorporated, the shareholders executed a shareholders' agreement, pursuant to which the corporation would purchase each shareholder's stock at the time of the shareholder's death. Under the terms of that agreement, ABCM was required to obtain life insurance on the lives of each of the four shareholders. Under an amendment to the shareholders' agreement executed on March 12, 1977, ABCM was required to carry life insurance in the amount of $350,000 on the lives of each of the officers, including Coonley. The policies in question were originally purchased through agent Gary J. Fegley from Manhattan Life Insurance Company. Coverage was later moved to Mutual Benefit Life Insurance Company, and ultimately, from July 1, 1987, to defendant Fortis.

The Fortis policy provided non-contributory life insurance in the amount of $400,000 for "officers" according to a benefits schedule. Exhibit H, Fortis Benefits Insurance Company Policy G 40,815, p. 7. However,

1445, 1451–54 (N.D.Iowa 1996); *Valentine v. American Home Shield Corp.,* 939 F.Supp. 1376, 1380–82 (N.D.Iowa 1996); *Hanson v. Hancock County Mem. Hosp.,* 938 F.Supp. 1419, 1425–27 (N.D.Iowa 1996); and *Coulter v. CIGNA Property & Cas. Cos.,* 934 F.Supp. 1101, 1106–07 (N.D.Iowa 1996).

3. The parties' statements of facts do not specifically identify the nature of ABCM's business. However, it appears from the record that ABCM's business was the operation and administration of nursing homes or other long-term health care facilities.

the policy defines "Eligible Classes" as follows:

**Eligible Classes:**

For employee insurance—

Class I: Each active, *full-time* employee of the *policy holder* or an *associated company*, working in the United States of America, except any (i) temporary or seasonal workers or (ii) member of Class II below.

Class II: Each active, *full-time*, Regional Manager, Financial Officer, Administrator, Consultant, Executive Officer Personnel, RN's and LPN's of the *policyholder* or an *associated company*, working in the United States of America, except any temporary or seasonal workers.

For dependent insurance—Each person eligible for employee insurance.

Exhibit H, p. 6 (emphasis in the original).[4] The policy defines "active work" as "working *full-time* for the *policyholder* or an *associated company* at your usual place of business." *Id.* at 3 (emphasis in the original). It defines "eligible class" as "a class of persons eligible for insurance under the *policy*. This class is based on employment or membership in a group." *Id.* (emphasis in the original). Furthermore, the policy defines "full-time" as "working at least 30 hours per week, unless indicated otherwise in the *policy*." *Id.* (emphasis in the original). "Policyholder" is defined as "the entity to whom the *policy* is issued." *Id.* (emphasis in the original). The policy does not define "employee."

Premiums were paid under this policy for coverage on the life of James E. Coonley II from July 1, 1987, until the date of Coonley's death on June 2, 1994. Those premiums totaled $9,059. On December 28, 1981, Coonley established a revocable trust that was subsequently renamed the James E. Coonley II Trust (the Trust). Plaintiff John E. Coonley (the Trustee) was named trustee of the Trust. Before his death, Coonley named the Trust as the beneficiary under the life insurance policy with Fortis.

From 1973 to 1985, Coonley's salary was paid directly to him and was reported by ABCM on a Form W–2 as employee compensation. On July 30, 1980, Coonley formed a professional corporation (PC) of which he was the sole shareholder. On August 1, 1980, Coonley entered into an employment agreement with the PC under which Coonley was to provide legal services exclusively to the PC except for any legal services provided by Coonley to ABCM. Services to ABCM were excluded from this agreement, because of Coonley's prior agreement to provide services to ABCM. The following November, Coonley's PC entered into a partnership with James E. Coonley, Sr. That partnership operated under the name of Coonley & Coonley, Attorneys at Law. Coonley & Coonley billed little business to ABCM, and Coonley continued to be paid directly by ABCM for his services. However, ABCM's business cards indicated the address of its legal department was the Hampton, Iowa, address of Coonley & Coonley. That address was also used for Coonley's PC. Meetings including ABCM shareholders and employees were frequently held at the Coonley & Coonley offices in Hampton, Iowa, as well.

For some time after Coonley formed his PC, he continued to receive his salary directly from ABCM. However, in late 1982 or early 1983, the Internal Revenue Service (IRS) audited Coonley's 1981 and 1982 individual income tax returns. The IRS challenged Coonley's allocation of income earned from his involvement with Coonley & Coonley to his PC. As part of a settlement reached with the IRS, Coonley was required to funnel all income generated after the audit by his personal services and employment through his PC. Consequently, from 1985 until his death, Coonley's "salary" from ABCM was not paid directly to Coonley, but was instead paid to his PC. That "salary" was reported by ABCM, not on a Form W–2, but on a Form 1099, where it was designated as non-employee compensation. However, Coonley's duties, responsibilities, and obli-

---

4. The parties dispute whether the policy provided coverage for "officers." The Trustee and ABCM characterize the coverage under the policy as $400,000 for "officers." Fortis characterizes the coverage for officers as applicable if the

"officer" is also an "eligible" employee in one of the classes of eligible persons identified in the policy. This dispute, however, is a legal dispute, not a factual one.

gations at ABCM did not change,[5] and ABCM continued to treat Coonley as an employee for the purposes of calculating life, health, and workers compensation insurance premiums.[6] Furthermore, ABCM continued to include Coonley's compensation in its computation of officers' compensation on its Form 1120S Federal Income Tax Returns.

The parties do not dispute that Coonley handled the following matters for ABCM: employer/employee litigation; State Survey responses and protests; investigation of employee harassment complaints; research for new projects and investments; interviews with potential administrators employed by ABCM; employee and facility correspondence; corporate wage structures and policies; development of the Freedom Building; development of a Medicare program and interviews with consultants; on-site visits to facilities and projects; review of a Personnel Guidebook; drafting of a Defined Benefit Program for employees choosing higher pay in lieu of benefits; various correspondence regarding ABCM and related entities; meetings with insurance representatives to develop employee insurance benefits; meetings with attorneys relative to ABCM issues; travel to Florida to check on operations of ABCM's facilities there; review of reports from ABCM consultants; ABCM day-to-day operational decisions and issues; review and retention of a general knowledge of the rules and regulations applicable to long-term care facilities; marketing and advertising; and correspondence and financial issues. The parties agree that Coonley spent approximately eighty hours per week on these and other tasks on behalf of ABCM. The parties do not dispute that the services Coonley provided to ABCM were not materially different in nature from the services provided by Allbee or Manoylovich, although they dispute whether Coonley provided his services as an employee or as an independent contractor.

The vast majority of Coonley's daily operational and management activity for ABCM was handled by telephone. At the time of his death, and for the two years prior to his death, Coonley lived in Cedar Rapids and he worked at ABCM's Cedar Rapids·office at least two full days a week. Much of Coonley's other work on behalf of ABCM was conducted by telephone from the offices of Coonley & Coonley in Hampton, ·Iowa. Almost half of the long-distance telephone calls from those offices were for ABCM business, and such calls were recorded separately. Correspondence relating to ABCM business dictated by Coonley while Coonley was at the offices of Coonley & Coonley was prepared on ABCM stationary.

Coonley died on June 2, 1994. On July 25, 1994, ABCM sent a written notice of Coonley's death and a claim for benefits under the life insurance policy in question here to Fortis. On May 28, 1995, the two surviving officers, directors, and shareholders of ABCM, Allbee and Manoylovich, executed a new Stock Purchase Agreement, which had been under negotiation prior to Coonley's death, under which ABCM was required to make payment of $400,000 to Coonley's estate in partial payment for Coonley's stock if Fortis failed to pay the policy proceeds allegedly due by December 31, 1995.

On July 6, 1995, Fortis sent a letter to ABCM through ABCM's counsel denying the claim for benefits under the policy as the result of Coonley's death. That letter indicates that the ground for denial of benefits is that Coonley was not an "employee" of ABCM eligible for coverage under the policy. Specifically, the letter states the following:

> According to the investigation undertaken by Fortis Benefits, it is the conclusion of this company that Mr. Coonley was not an employee of ABCM. Therefore, Mr. Coonley was not within an eligible class as defined in the policy. Because he was not part of an eligible class, he was not eligible for coverage. Consequently, the claim for proceeds must be denied.

---

**5.** The parties dispute whether Coonley's employment status nonetheless changed from employee to independent contractor. This is again a legal dispute, not a factual one.

**6.** Whether such treatment was legally improper, as Fortis contends, is also a legal dispute, not a factual one. Furthermore, it is not a legal dispute this court must resolve to resolve the pending cross-motions for summary judgment.

Exhibit V, Letter of July 6, 1995, from Brian Bullock, Supervisor, Life Benefit Center, Fortis Benefit Insurance, to Robert E. Drey, counsel for ABCM, p. 2.

After receiving this letter, in order to finalize the payment plan to be adopted for Coonley's stock under the prior Stock Purchase Agreement, on August 15, 1995, the Trust and ABCM entered into an agreement. Under the agreement of August 15, 1995, the Trust would receive the proceeds from the policy issued by Fortis if the proceeds were paid prior to December 31, 1995. However, if no such payment was made by that date, ABCM would be entitled to any proceeds paid by Fortis. To date, Fortis has made no payment of benefits under the policy for Coonley's death.

Since Coonley's death, ABCM's operations have actually decreased in size. However, since Coonley's death, ABCM has hired a number of individuals who now handle work previously done by Coonley. These new hires include a full-time human resources consultant, a full-time publications consultant, two additional part-time corporate administrators, four additional quality assurance nurses, and one and one-half additional office personnel.

Although the parties assert various factual disputes, the court finds that these disputes are, for the most part, disputes about the legal conclusions to be drawn from undisputed facts. To the extent the court discovers a genuine issue of material fact, therefore, the court will address the dispute in its legal analysis.

## IV. LEGAL ANALYSIS

### (including some further findings of fact)

Although the parties' cross-motions for summary judgment are devoted to the ERISA benefits claim, Count II of the plaintiff's complaint is a civil claim for damages for breach of a life insurance contract between ABCM and Fortis. Almost in passing, Fortis contends that the plaintiffs' state common-law breach of contract claim is preempted by ERISA. The court concludes that it need not address the preemption issue in order to determine whether the present dispositive motions indeed dispose of the entire case, because it is readily apparent that if the court concludes that Coonley was not an "employee" within the meaning of the policy, the breach of contract claim would also fail. However, if the plaintiffs prevail on their own motion for summary judgment, because the court concludes that Coonley was an "employee" within the meaning of the policy, then the court may have to entertain further briefs and arguments on the question of whether ERISA preempts the common-law breach of contract claim in order to determine what remedies, if any, besides the proceeds of the life insurance policy, are available to the plaintiffs. The court therefore turns to the central question presented by the parties in their cross-motions for summary judgment, which is whether Coonley was covered by the life insurance plan.

The parties have put forward three different standards for answering that question, but each asserts that the only proper answer, whatever the applicable standard, is the one that party favors. Thus, the court is asked to consider whether Coonley was even required to be an "employee" within the meaning of the policy, or whether, as the plaintiffs contend, it is sufficient, under the clear and unambiguous language of the policy, that Coonley was an "officer" who worked more than thirty hours per week for ABCM. The court is also asked to consider whether Coonley was an "employee" based on the dictionary, or ordinary and common, meaning of the term, an alternative contention raised by the plaintiffs. Finally, the court is asked to consider, principally on the assertion of Fortis, whether Coonley was an "employee" based on federal common-law factors distinguishing employees from independent contractors. The determination of which of the proposed standards applies, and what result each standard dictates, begins with an examination of the principles of interpretation of ERISA plans.

### A. Principles Of Interpretation Of ERISA Plans

#### 1. Standard of review

The Eighth Circuit Court of Appeals recently observed,

When reviewing a plan administrator's decision to deny benefits to a claimant, "a reviewing court should apply a de novo standard of review unless the plan gives the 'administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan.'" *Donaho v. FMC Corp.*, 74 F.3d 894, 898 (8th Cir.1996) (quoting *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 956–57, 103 L.Ed.2d 80 (1989)). [The plaintiff] asserts, and [the insurer] does not dispute, that the Plan does not vest discretionary interpretive authority in [the insurer]. We therefore review the denial of benefits de novo.

*Wilson v. Prudential Ins. Co. of Am.*, 97 F.3d 1010, 1013 (8th Cir.1996). By way of contrast, "[w]hen an ERISA plan fiduciary ... has authority to determine eligibility for an ERISA benefit plan or to interpret plan terms, the fiduciary's refusal to pay benefits under the plan is reviewed for an abuse of discretion." *Fink v. Union Central Life Ins. Co.*, 94 F.3d 489, 491 (8th Cir.1996) (also citing *Bruch*, 489 U.S. at 115, 109 S.Ct. at 956–57); *Birdsell v. United Parcel Serv.*, 94 F.3d 1130, 1133 (8th Cir.1996) ("Because the plan gave UPS the exclusive right and discretion to determine eligibility of benefits, the district court reviewed the decision to deny benefits for abuse of discretion," citing *Maune v. International Bhd. of Elec. Workers*, 83 F.3d 959, 962 (8th Cir.1996)).[7]

■ As in *Wilson*, no party asserts that the Plan in question here vests discretionary interpretive authority in Fortis. Therefore, this court will review the denial of benefits in this case *de novo*. *Wilson*, 97 F.3d at 1013.

### 2. Applicable law

■ Although it might seem logical that state law would control, because interpretation of a contract is ordinarily a question of state law, that is not the case here, where the contract in question is an ERISA plan. *Cf. Mohamed v. Kerr*, 53 F.3d 911, 913 (8th Cir.)

("Although it seems logical that state law would control, the interpretation of a marital termination agreement ordinarily being a matter of state law, that is not the case" when the group life insurance policy at the heart of the dispute was an ERISA plan), *cert. denied*, —— U.S. ——, 116 S.Ct. 185, 133 L.Ed.2d 123 (1995). In *Mohamed*, the Eighth Circuit Court of Appeals found that it was compelled to look to federal common law to interpret the terms of an ERISA plan, even though no cause of action was stated under an ERISA provision, and the parties did not claim that a particular ERISA section expressly governed the issue of interpretation before the court. *Id.* Here, an ERISA cause of action, interference with ERISA benefits, has been asserted, but the parties still do not assert that any particular ERISA section expressly governs the issue of interpretation before this court. Thus, the court concludes that it is "compelled to look to federal common law." *Id.* (citing *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 56, 107 S.Ct. 1549, 1557–58, 95 L.Ed.2d 39 (1987), and *Reid v. Connecticut Gen. Life Ins. Co.*, 17 F.3d 1092, 1098 (8th Cir.1994), the latter of which states, "where there is no federal statutory law to apply in ERISA litigation, 'federal common law,' not state law, should be applied").

In fashioning federal common law for the purposes of interpreting an ERISA plan, the court may look for guidance to state law. *Mansker*, 54 F.3d at 1326 ("In fashioning federal common law under ERISA, including principles that govern the legal effect of plan terms, courts may look to state law for guidance...."). Although the federal court may look to state law for guidance in developing federal common law, "it is inappropriate to apply state law if it conflicts with ERISA or its underlying policies." *Mohamed*, 53 F.3d at 913 (citing *Brewer v. Lincoln Nat'l Life Ins. Co.*, 921 F.2d 150, 153 (8th Cir.1990), *cert. denied*, 501 U.S. 1238, 111 S.Ct. 2872, 115 L.Ed.2d 1038 (1991), and *Pilot Life Ins.*

---

7. The court in *Fink* also stated that a plan fiduciary does not abuse its discretion unless its refusal to pay benefits is "'extraordinarily imprudent or extremely unreasonable.'" *Fink*, 94 F.3d at 491 (quoting *Lickteig v. Business Men's Assurance Co. of Am.*, 61 F.3d 579, 583 (8th

Cir.1995), with cases quoted in turn omitted). However, whether the district court should have applied the deferential standard is reviewed by the appellate court *de novo*. *Id.*; *Birdsell*, 94 F.3d at 1133.

*Co.*, 481 U.S. at 56, 107 S.Ct. at 1557–58; *see also Mansker*, 54 F.3d at 1326 (the court may look to state law for guidance "so long as the state law is not contrary to the provisions of ERISA," also citing *Brewer*, 921 F.2d at 153–54).

### 3. *Rules of interpretation*

In *Wilson*, the Eighth Circuit Court of Appeals also briefly outlined the most critical of the rules of interpretation for ERISA plans:

> In interpreting ERISA plans, the plainly stated terms "should be accorded their ordinary, and not specialized, meanings." *Brewer v. Lincoln Nat'l Life Ins. Co.*, 921 F.2d 150, 154 (8th Cir.1990), *cert. denied*, 501 U.S. 1238, 111 S.Ct. 2872, 115 L.Ed.2d 1038 (1991). We must construe each provision consistently with the others and as part of an integrated whole so as to render none of them nugatory and to avoid illusory promises.

*Wilson*, 97 F.3d at 1013; *see also Jacobs v. Pickands Mather & Co.*, 933 F.2d 652, 657 (8th Cir.1991) (in interpreting an ERISA plan, " 'we must begin by examining the language of the plan document[ ]. Each provision should be read consistently with the others [and] the terms must be construed to render none of them nugatory,' " quoting *Harper v. R.H. Macy & Co.*, 920 F.2d 544, 545 (8th Cir.1990), in turn quoting *DeGeare v. Alpha Portland Indus., Inc.*, 837 F.2d 812, 814–15 (8th Cir.1988), *vacated and remanded*, 489 U.S. 1049, 109 S.Ct. 1305, 103 L.Ed.2d 575 (1989)).[8]

The Eighth Circuit Court of Appeals has also observed that the issue of interpretation of an ERISA plan is " 'simply one of contract interpretation.' " *Jacobs*, 933 F.2d at 657 (quoting *Harper*, 920 F.2d at 545, in turn

quoting *Anderson v. Alpha Portland Indus., Inc.*, 836 F.2d 1512, 1516 (8th Cir.1988)). Thus, in addition to applying the ordinary meaning of terms and construing disputed terms consistent with other terms so as to render none of them nugatory, the court may admit extrinsic evidence to aid in construction of the terms of the plan. *Farley v. Benefit Trust Life Ins. Co.*, 979 F.2d 653, 657 (8th Cir.1992) (when an ERISA plan is ambiguous, "extrinsic evidence is admissible to determine the meaning of the contract. *See, e.g., Landro v. Glendenning Motorways, Inc.*, 625 F.2d 1344, 1353 (8th Cir.1980); *see also Restatement (Second) of Contracts* § 214(c) at 132–33, comment b at 133 (1981). This principle is applicable even to contracts governed by ERISA...."); *Delk v. Durham Life Ins. Co.*, 959 F.2d 104, 106 (8th Cir.1992) (citing *DeGeare*, 837 F.2d at 816); *DeGeare*, 837 F.2d at 816 ("If examination of the plan documents reveals ambiguities, extrinsic evidence may be considered."); *Anderson v. Alpha Portland Indus., Inc.*, 836 F.2d 1512, 1517 (8th Cir.1988) (" '[I]f the contract is deemed ambiguous, then the court may weigh extrinsic circumstances to aid in its construction,' " quoting *UFCW Local 150–A v. Dubuque Packing Co.*, 756 F.2d 66, 69 (8th Cir.1985)). The question of what "other evidence" is admissible on the meaning of contract terms "turns on the relative ambiguity of the plan provision being construed." *Jensen v. SIPCO, Inc.*, 38 F.3d 945, 950 (8th Cir.1994), *cert. denied*, — U.S. —, 115 S.Ct. 1428, 131 L.Ed.2d 310 (1995). Only if neither the plan clause in which the terms in question are located, nor the entire plan instrument provides clarification, should the court take the third step and look at extrinsic evidence to determine the meaning and effect of the particular clause. *Jensen*, 38 F.3d at

---

8. The decision in *DeGeare* was vacated and remanded for reconsideration in light of the Supreme Court's decision in *Bruch*, 489 U.S. at 101, 109 S.Ct. at 948. *See DeGeare v. Slattery Group, Inc.*, 489 U.S. 1049, 109 S.Ct. 1305, 103 L.Ed.2d 575 (1989). In *Bruch*, the Supreme Court clarified when a deference standard of review is applicable to a denial of benefits and when the court must review such a denial de novo. *Bruch*, 489 U.S. at 115, 109 S.Ct. at 956–57. In the decision of the Eighth Circuit Court of Appeals in *DeGeare*, the court had employed a

deference standard of review to the plan administrator's denial of benefits without regard to whether the plan granted the administrator authority to interpret the plan. *DeGeare*, 837 F.2d at 814–15. Thus, other principles articulated in *DeGeare* are not implicated by vacation and remand of the decision, and the Eighth Circuit Court of Appeals has from time to time relied on *DeGeare* as stating the rules for interpretation of ERISA plans. *See infra*. This court will do the same.

950. The extrinsic evidence must go to the intent of the parties to the plan. *Id.* at 950–51 (detailing evidence of the parties' intent).

### B. Who Is Covered By This ERISA Plan?

#### 1. Clear and unambiguous language

■ In their motion for summary judgment, ABCM and the Trustee argue first that, under the clear and unambiguous language of the policy, James E. Coonley was, at the time of his death, eligible for coverage under the policy, and his beneficiary is therefore entitled to the proceeds of the policy as a matter of law. ABCM and the Trustee point out that it is undisputed that Coonley worked more than the thirty hours per week for ABCM required for eligibility—indeed, they assert that he worked approximately eighty hours per week for ABCM—and that Coonley was an officer of ABCM, specifically, its secretary. From the briefs, the court understood the plaintiffs to be arguing that Coonley was eligible for coverage under the policy by virtue of being an officer, whether or not he was also an "employee" under the terms of the policy. However, at oral arguments, counsel for the plaintiffs clarified their position to be that, because "employee" was undefined in the policy, the critical portion of the eligibility requirements was the number of hours worked per week on behalf of the company, and that an officer who worked that many hours per week for the company must necessarily be an employee eligible for coverage. Fortis's response to the plaintiffs' arguments is that the policy, by its unambiguous terms, does not cover "officers," but only eligible "employees," and Coonley was not such an "employee."

The policy defines only two "Eligible Classes" for coverage. Exhibit H, p. 6. The court concludes that Coonley was eligible for coverage, if at all, only if he was an "employee" in either Class I or Class II. Neither of the "eligible classes" is defined in terms of holding an office in the corporation. Exhibit H, p. 6. Although the Fortis policy provided non-contributory life insurance in the amount of $400,000 for "officers" according to a benefits schedule, Exhibit H, p. 7, the court concludes that the reference to coverage for "officers" establishes only the *amount* of coverage available for "officers" who are members of an "eligible" class of employees. To read the policy to provide coverage for "officers," without regard to any other eligibility requirement, would render nugatory the specification elsewhere in the Plan of classes eligible for coverage. *See Wilson,* 97 F.3d at 1013 (an ERISA plan should be interpreted so as to render none of its provisions nugatory); *Jacobs,* 933 F.2d at 657 (same).[9] Furthermore, giving the terms of the plan their ordinary meanings, it would be a considerable strain to read the ordinary meaning of "benefits schedule" as stating eligibility requirements for coverage, particularly when there is a provision of the policy plainly stating that it identifies "eligible classes" for coverage. *Id.* (terms should be given their ordinary meaning).

Next, the court concludes that Coonley could be an "eligible" employee only by virtue of his membership in Class I. Although Coonley has been asserted to be an "active, *full-time* employee of the *policy holder* or an *associated company,* working in the United States of America," and not "any (i) temporary or seasonal workers or (ii) member of Class II," thus meeting the requirements of Class I eligibility, there has been no assertion, and there is no hint in the record, that Coonley was an "active, *full-time,* Regional

---

9. Consequently, prior to oral arguments, the court understood the plaintiffs to be bolstering their argument for eligibility for coverage on the basis that Coonley was an "officer" by asserting that he met the "active, full-time" portion of the Class I eligibility requirements, although Class I defines eligibility in terms of "active, full-time *employee[s].*" Exhibit H, p. 6 (emphasis omitted and added). The plaintiffs' argument, at least as the court understood it from the briefs, in effect read out of the Class I eligibility requirements only the portion of those requirements the plain-

tiffs found troublesome, the word "employee." Such an argument is unpersuasive. Working a sufficient number of hours alone does not establish that a person is an "employee" within the meaning of the policy, nor is an "officer" necessarily an "employee," even if the officer undisputedly worked in excess of the number of hours required to be an eligible employee. The language of the policy's eligibility provisions requires that a person be both an employee and work a sufficient number of hours.

Manager, Financial Officer, Administrator, Consultant, Executive Officer Personnel, RN's and LPN's of the *policyholder* or an *associated company,* working in the United States of America" as required for membership in Class II. Exhibit H, p. 6 (emphasis in the original).

Consequently, the plaintiffs' first contention, that Coonley did not have to be an "employee" to be covered by the policy if he was an "officer," or that he was necessarily an employee, because he was an officer who worked more than thirty hours per week, fails, even on the plaintiffs' own "clear and unambiguous meaning" standard. The policy clearly and unambiguously does *not* provide coverage for Coonley simply on the basis that he was an "officer," as the plaintiffs first appeared to assert. It provides coverage for "employees" who work a sufficient number of hours per week. Although it is undisputed that Coonley worked a sufficient number of hours per week, the question that remains is whether Coonley, although an officer, was also an "employee" within the meaning of the policy.

### 2. *Dictionary meaning*

■ The plaintiffs next argue that Coonley was an "employee" of ABCM under the ordinary and popular, that is, the dictionary, definition, because he was "a person hired by another, or by a business or firm, etc., to work for wages or a salary," citing WEB-STER'S NEW WORLD DICTIONARY (2d College ed. 1984). Specifically, the plaintiffs argue that Coonley received the same "salary" from ABCM as the other shareholders/officers, Allbee, Benge, and Manoylovich, and Coonley provided "work" or "services" for ABCM. The plaintiffs then argue, in the alternative,

that the term "employee," which is not defined in the policy, is ambiguous, and that ambiguity must be construed against the drafter of the policy, Fortis, under the doctrine *contra proferentem,* citing *Delk,* 959 F.2d at 106.

Fortis counters that Coonley does not fit the dictionary definition of "employee," because he was not a person receiving wages or a salary. Rather, the entity with which ABCM was doing business was Coonley's professional corporation (PC), not Coonley himself, and it was this PC that was paid with sums reported to the IRS and on the ABCM company books as non-employee compensation from which no payroll deductions were taken. Fortis responds to the plaintiffs' argument that any ambiguity of the term "employee" must be construed against Fortis by arguing that the applicability of the *contra proferentem* doctrine in ERISA cases has been rejected in this circuit, whatever the rule may be elsewhere, citing *Brewer v. Lincoln Nat'l Life Ins. Co.,* 921 F.2d 150 (8th Cir.1990).[10]

### a. "Dictionary" definition

The Eighth Circuit Court of Appeals has embraced the principle that terms of an ERISA plan should be accorded their ordinary, not specialized meanings. *Wilson,* 97 F.3d at 1013 ("In interpreting ERISA plans, the plainly stated terms 'should be accorded their ordinary, and not specialized, meanings,'" quoting *Brewer,* 921 F.2d at 154); *Mansker,* 54 F.3d at 1327 (also citing *Brewer,* 921 F.2d at 154, and stating, "In applying the federal common law rule announced in *Brewer,* we must accord the term [in dispute] its ordinary, not specialized, meaning."). To put it another way, the court will reject legal

---

**10.** The plaintiffs are correct in their assertion that many circuit courts of appeals recognize the contra insurer rule or *contra proferentem* rule in ERISA cases, but sometimes with varying caveats about when the rule can be applied. *See, e.g., Vizcaino v. Microsoft Corp.,* 97 F.3d 1187, 1196 (9th Cir.1996) (finding that the rule was applicable to ERISA plans in general, but that the court would not apply the rule to ERISA plans that were the product of arms-length negotiation, or where the plan authorized the administrator to exercise its discretion to construe the plan, because it would be inconsistent to review an interpretation for abuse of discretion, then apply the

rule of *contra proferentem,* although no such inconsistency exists when the court reviews the administrator's interpretation de novo); *Morton v. Smith,* 91 F.3d 867, 871 n. 1 (7th Cir.1996) (noting that the contra insurer rule "can sometimes be relevant to the interpretation of an ERISA benefit plan" under the federal common law, but that the rule could only be invoked when the court was reviewing de novo an administrator's or insurer's interpretations; courts have "no occasion to employ the rule of *contra proferentem*" when conducting a deferential review).

definitions of terms that "are not consistent with what an average plan participant would understand the words to mean." *Mansker*, 54 F.3d at 1327 (citing 29 U.S.C. § 1022(a)(1), which provides that a plan description should be "written in a manner calculated to be understood by the average plan participant").

In this case, the court concludes that Coonley's employment arrangement does not make him an employee of ABCM within the ordinary meaning of "employee." *Wilson*, 97 F.3d at 1013; *Mansker*, 54 F.3d at 1327; *Brewer*, 921 F.2d at 154. Assuming the plaintiffs' proffered dictionary meaning to be the perfect embodiment of the ordinary meaning of "employee," as Fortis has observed, Coonley is not the "person" "hired" by ABCM to "work" for "wages or a salary." WEBSTER'S NEW WORLD DICTIONARY (2d College ed. 1984). Although at the outset Coonley was directly hired and recompensed with a salary by ABCM, the undisputed record is that such an arrangement ended in 1985, because, from 1985 until his death, the "salary" for Coonley's services to ABCM was not paid directly to Coonley, but was instead paid to his PC. On the undisputed record, from 1985 on, ABCM hired Coonley's PC, not Coonley, and Coonley was in turn "hired" by the PC to perform the tasks the PC was obligated to perform. It was the PC that received the "salary" for Coonley's services, and that "salary" was in fact recorded by ABCM as "non-employee compensation," while Coonley received his salary from the PC pursuant to the settlement with the IRS.

Furthermore, the court concludes that its reading of the meaning of "employee" in relation to Coonley's circumstances is "consistent with what an average plan participant would understand the word[ ] to mean." *Mansker*, 54 F.3d at 1327 (citing 29 U.S.C. § 1022(a)(1)). The court has every confidence that an average plan participant would not understand the employment arrangement between Coonley, his PC, and ABCM to be an ordinary employee-employer relationship between Coonley and ABCM. Nor would an average plan participant understand "non-employee compensation," such as the payment from ABCM to Coonley's PC, from which no standard employment deductions were taken, to be "wages or a salary," or at least not "wages or a salary" to Coonley, while an average participant would understand Coonley to have received "wages or a salary" from the PC for services performed for the PC's client, ABCM. The employment arrangement here does not make Coonley an "employee" using the second, "ordinary meaning" standard asserted by the plaintiffs.

#### b. Ambiguity

As a fall back position to their argument for application of dictionary meanings, the plaintiffs contend that "employee," as used in the policy, is ambiguous and that ambiguity must be construed against Fortis. The plaintiffs have much to prove to establish that "employee" is ambiguous. In *RSBI Aerospace, Inc. v. Affiliated FM Ins. Co.*, 49 F.3d 399 (8th Cir.1995), the court found that the insured's argument that "employee" was ambiguous within the meaning of an insurance policy exclusionary clause had not been presented to the trial court, so that it was not properly before the appellate court. *RSBI*, 49 F.3d at 402. Nonetheless, the court continued as follows:

> Even if we were to consider the merits of RSBI's argument, however, it would fail because although the term "employee" may be ambiguous in certain situations, the term is not inherently ambiguous and any ambiguity should be examined in the context of each case.

*RSBI*, 49 F.3d at 402. Taking guidance from this dicta, because the question of whether or not "employee" is ambiguous is directly before this court, this court agrees that "employee" is not inherently ambiguous, but the court will nonetheless examine any ambiguity in the context of the particular ERISA plan in question here. *Id.*[11]

Furthermore, "[a] contract is ambiguous when it is reasonably susceptible to more than one interpretation." *Wilson*, 97 F.3d at

---

11. Indeed, the court's first impression is not that the term "employee" in the plan is in any way ambiguous, but that Coonley's unique circumstances may make his precise employment status ambiguous. Those circumstances were created by Coonley and ABCM, not by Fortis, the drafter of an unambiguous policy.

1012 (citing *Ehrhardt v. Penn Mut. Life Ins. Co.*, 902 F.2d 664, 667 (8th Cir.), *cert. denied*, 498 U.S. 855, 111 S.Ct. 152, 112 L.Ed.2d 118 (1990)). In *Wilson*, the court found that a Plan exclusion, which one party asserted denied benefits to those who could be covered by Missouri workers' compensation law and who suffered a workplace injury or disease, was unambiguous when each sentence of the benefits exclusion was explained separately and the contentions of the parties were then considered in light of the whole exclusion. *Id.* at 1013–14. Thus, although the parties in *Wilson* had differing interpretations of the benefits exclusion in the plan, the contract itself was not reasonably susceptible to more than one of those interpretations. *Id.*

Although the parties take different positions on whether "employee," as used in the policy, covers Coonley, the court concludes that the contract itself is not reasonably susceptible to more than one of those interpretations, and therefore the clause in question is not ambiguous. *Id.* The term "employee" is not reasonably susceptible to an interpretation that would include the employment arrangement between Coonley, his PC, and ABCM. Nor is the term "employee" reasonably susceptible to include a relationship in which compensation is not paid to the purported employee, subject to ubiquitous employment deductions, but is instead paid as "non-employee compensation" from which no standard employment deductions are taken. Consequently, there is no ambiguity to be construed against Fortis, and, as a matter of law, Coonley was not an employee within the meaning of the Plan.[12]

---

12. Were the court to find that an ambiguity exists, as the plaintiffs assert, in the meaning of "employee" under the Plan, the court would have to decide whether or not that ambiguity should be construed against the drafter of the policy, Fortis. The Eighth Circuit Court of Appeals has said, on more than one occasion, " '[U]nless the plan language specifies otherwise, courts should construe any disputed language 'without deferring to either party's interpretation.' " *Jacobs*, 933 F.2d at 657 (quoting *Wallace v. Firestone Tire & Rubber Co.*, 882 F.2d 1327, 1329 (8th Cir.1989)); *Brewer*, 921 F.2d at 153–54 (also quoting *Wallace*). In *Brewer*, the Eighth Circuit Court of Appeals appeared to settle the question of whether the *contra proferentem* or contra insurer rule was applicable to ERISA plans. *Brewer*, 921 F.2d at 153–54. The district court utilized Missouri's rule of construction requiring that ambiguities in insurance contracts be resolved in favor of the insured. *Id.* at 153. Although the appellate court found that state law could be used as a guide for fashioning federal common law, which must ultimately govern, state law that conflicts with provisions of ERISA cannot be used. *Id.* The court found that Missouri's "contra insurer" rule violated provisions of ERISA and thus could not be used to interpret the terms of a plan. *Id.* The court noted that in *Bruch*, the Supreme Court had injected principles of trust law into ERISA, and among those principles was the principle that the courts should construe disputed language " 'without deferring to *either* party's interpretation.' " *Id.* at 154 (quoting *Wallace*, 882 F.2d at 1329, in turn quoting *Bruch*, 489 U.S. at 112, 109 S.Ct. at 955, with emphasis as added in *Brewer*). For this reason, the Eighth Circuit Court of Appeals determined that, when interpreting terms of an ERISA plan, "neither party's construction should be favored." *Id.* Consequently, the court resolved the ambiguity by interpreting the language as would "an average plan participant." *Id.*

Most later decisions cite *Brewer* for the proposition that the contra insurer rule is not available to resolve ambiguities in ERISA plans. *See Mansker*, 54 F.3d at 1326–27 (rejecting the contra insurer rule upon the authority of *Brewer*); *Maxa v. John Alden Life Ins. Co.*, 972 F.2d 980, 985 (8th Cir.1992) ("We also note that we are bound by this Court's earlier holding in *Brewer* that 'the contra insurer rule [i.e., the doctrine of *contra proferentum* [sic]] does not regulate insurance and is preempted by ERISA.' 921 F.2d at 153. That rule 'requir[es] that ambiguities in insurance contracts be resolved in favor of the insured....' *Id.* However, as *Brewer* states, that 'rule of construction violates the provisions of ERISA and thus cannot be used to interpret the plan's terms.' *Id.*"), *cert. denied*, 506 U.S. 1080, 113 S.Ct. 1048, 122 L.Ed.2d 357 (1993).

Yet, the plaintiffs contend that one later decision casts doubt on this circuit's rejection of the contra insurer rule in ERISA cases. In a per curiam opinion, *Delk v. Durham Life Ins. Co.*, 959 F.2d 104 (8th Cir.1992), the Eighth Circuit Court of Appeals distinguished *Brewer* and resolved the ambiguity in the ERISA plan before it, as follows:

After applying ordinary principles of interpretation to the plan at issue, *see DeGeare v. Alpha Portland Indus.*, 837 F.2d 812, 816 (8th Cir.1988), the district court found the language of the plan ambiguous. When extrinsic evidence failed to resolve the ambiguities in the language, the court construed the language of the plan against Durham. In *Brewer v. Lincoln Nat'l Life Ins. Co.*, 921 F.2d 150, 153 (8th Cir.1990), we held that the Missouri rule of construction that requires ambiguities to be construed in favor of the insured could not be used in interpreting the terms of a plan gov-

### 3. Common-law factors

■ Finally, and grudgingly, the plaintiffs contend that, if the federal common-law definition of "employee" is applicable, Coonley met the common-law requirements at the time of his death, because the substance of his relationship with ABCM fits all of the common-law factors courts are to consider. The theme of the plaintiffs' arguments is that Coonley was a "key" employee of ABCM in every respect, except possibly in form. The applicability of these federal common-law factors is the main thrust of Fortis's argument for summary judgment in its favor. Applying federal common-law factors, Fortis asserts that Coonley was an independent contractor, not an employee, and that Coonley was an "employee" only of his PC.

In its own motion for summary judgment, Fortis focuses this argument, asserting that Coonley could not be a non-employee for tax purposes and an employee for ERISA purposes, when the federal common-law test for an employee in each situation is the same, citing 26 U.S.C. § 3121(d)(2), *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 112 S.Ct. 1344, 117 L.Ed.2d 581 (1992), and *Collins v. Central States, Southeast & Southwest Areas Health and Welfare Fund*, 18 F.3d 556, 560 (8th Cir.1994). Fortis asserts that both ABCM and Coonley derived tremen-

dous tax advantages from structuring and recompensing Coonley's work for ABCM through Coonley's PC.[13] Fortis contends that the plaintiffs cannot now have it both ways by arguing that Coonley was really an "employee" of ABCM, having reaped tax benefits on the ground that Coonley was *not* an employee.

In resistance to Fortis's motion for summary judgment, the plaintiffs again contend that the federal common-law definition of "employee" is not read into an ERISA-governed policy as a matter of course, but instead, at least in the first instance, "employee" must be defined by the plain language of the contract, as that language is read in a popular and ordinary sense. The plaintiffs assert that both the *Darden* and *Collins* cases are distinguishable from the facts of this case and therefore those cases do not present the proper framework for analysis. Instead, they contend that the proper rule is the use of dictionary or ordinary meanings of terms, construed against the drafter, citing *Delk*, 959 F.2d at 106. Even if the federal common-law definition of an "employee" is applicable, however, the plaintiffs contend that Coonley fits that definition.

### a. Applicability of the common-law test

First, the court reiterates that jumping from an ambiguity under the ordinary mean-

---

erned by ERISA. There, we were able to resolve the ambiguity in the language by interpreting the language as would "an average plan participant." *See id.* at 154 (quoting 29 U.S.C. § 1022(a)(1) (1988)). The language at issue in *Brewer* ceased to be ambiguous when it was accorded its ordinary, and not specialized, meaning. *Brewer*, 921 F.2d at 154.

Here, however, as the district court aptly demonstrated, the language remains ambiguous even after applying the approach in *Brewer*. Therefore, the district court correctly used the principle *contra proferentem* and construed the ambiguous language against Durham. As a matter of federal common law, a court construing plans governed by ERISA should construe ambiguities against the drafter only if, after applying ordinary principles of construction, giving language its ordinary meaning and admitting extrinsic evidence, ambiguities remain. *See DeGeare*, 837 F.2d at 816 (stating that "[c]onstruing ambiguities against the drafter should be the last step of interpretation, not the first step"); *see also Taylor v. Continental Group Change In Control Severance Pay Plan*, 933 F.2d 1227, 1233 (3rd Cir.1991).

*Delk*, 959 F.2d at 106. Thus, *Delk* does not authorize the application of the contra insurer rule as the first response to an ambiguity, but only as the last available means to resolve an ambiguity. Similarly, in *DeGeare*, the Eighth Circuit Court of Appeals disagreed with application of the contra insurer rule so that, "the instant we determine that the plan documents are ambiguous, [the insureds] win." *DeGeare*, 837 F.2d at 816. Instead, there is no need to resort to the contra insurer rule if other rules of construction result in a reasonable interpretation of the plan. *Id.*

Here, the court concludes that the term "employee" within the meaning of the Plan simply is not ambiguous when the ordinary meaning of the term is considered, or, if any ambiguity then remained, it would be dispelled by considering extrinsic evidence to determine whether Coonley was an "employee" within the meaning of the plan. Such extrinsic evidence is examined in the next section.

**13.** The plaintiffs contend that there is no evidence in the record that they derived tax advantages from this arrangement.

ing of terms to construing a term against the insurer leaves a critical step out of the analysis, even under *Delk,* the authority cited by the plaintiffs. In *Delk,* the Eighth Circuit Court of Appeals upheld use of the contra insurer rule only after other means to resolve the ambiguity had been exhausted. *Delk,* 959 F.2d at 106. The court may still consider extrinsic evidence and other rules of construction to resolve any ambiguity before construing the disputed terms against the insurer, if *Delk* rather than *Brewer* states the rule in this circuit.

Next, the court finds that a recent decision of the Eighth Circuit Court of Appeals specifically invokes application of the common-law analysis Fortis asserts here. In *Berger Transfer & Storage,* the Eighth Circuit Court of Appeals was presented with the question of whether owner-operators of a transfer company were "employees" within the meaning of an ERISA plan, or were instead independent contractors. *Berger Transfer & Storage,* 85 F.3d at 1376. The underlying question was whether an employer was obligated to make contributions on behalf of the owner-operators under a plan that provided that contributions would be made on behalf of "employees." *Id.* Because there is no reference in the decision to any definition of "employee" in the plan documents, it appears that, as in this case, the plan included no

definition of the term. *Compare Collins,* 18 F.3d at 558 (the plan defined "employee" as including "[a]ll persons employed by the Union [Local 554] upon being proposed by the Union and accepted by the Trustees" and also stated that "[i]n all instances the common-law test for, or the applicable statutory definition of, master-servant relationship shall control Employee status"; thus, the plan in question specifically incorporated the common-law test of who is an "employee" within the meaning of the plan).[14] Consequently, even though the plaintiffs contend that *Darden* and *Collins,* which apply the same test, are distinguishable, this court finds *Berger Transfer & Storage* to be instructive in the circumstances presented here; that is, *Berger Transfer & Storage* is instructive as to the proper standard for determining who is an "employee" within the meaning of an ERISA plan that is silent as to the meaning of the term. *Compare Epright v. Environmental Resources Mgmt., Inc., Health and Welfare Plan,* 81 F.3d 335, 340 (3d Cir.1996) (where there was no definition of "full-time employee" in an ERISA plan, it was reasonable for the court to look to the Social Security Act for a definition, citing *Gaines v. Amalgamated Ins. Fund,* 753 F.2d 288, 289 (3d Cir.1985), but where the plan before the court contained a definition, there was no reason to look outside the plan for an interpretation).[15]

14. In *Collins,* the Eighth Circuit Court of Appeals also found that the plan in question did grant the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan, and therefore reviewed denial of benefits under the "deferential arbitrary-and-capricious standard" described in *Bruch,* 489 U.S. at 115, 109 S.Ct. at 956–57. *Collins,* 18 F.3d at 559. This is obviously another distinction between *Collins* and the present case, but it doesn't render *Collins* wholly inapplicable here, because the common question is, what test should apply to determinations of who is an "employee" within the meaning of an ERISA plan. Although the plan itself answered that question in *Collins,* if the court determines that the same test is applicable here, for whatever reason, *Collins* may still be instructive on how the test should be applied.

15. This common-law test of who is an employee versus who is an independent contractor is routinely applied by the circuit courts of appeals to the question of who is an "employee" within the meaning of the ERISA statute. *See, e.g., Darden,*

503 U.S. 318, 323–24, 112 S.Ct. 1344, 1348–49; *Herr v. Heiman,* 75 F.3d 1509, 1512 (10th Cir. 1996) (because ERISA defines "employee" only as "any individual employed by an employer," "[t]he Supreme Court has held that traditional agency criteria should be used to determine whether a worker qualifies as an employee," citing *Darden* ); *Illinois Conference of Teamsters Welfare Fund v. Mrowicki,* 44 F.3d 451, 460 (7th Cir.1994) (the *Darden* test of who is an employee is applicable to both ERISA and the Labor Management Relations Act (LMRA)); *Daughtrey v. Honeywell, Inc.,* 3 F.3d 1488, 1492 (11th Cir. 1993) ("The term 'employee' as used in ERISA incorporates traditional agency law criteria for distinguishing an employee relationship from that of an independent contractor," citing *Darden* for the articulation of the criteria); *see also Lambertsen v. Utah Dep't of Corrections,* 79 F.3d 1024, 1028 (10th Cir.1996) (finding that *Darden's* test of who is an employee under ERISA was also applicable to Title VII). Such a test of who is an employee within the meaning of the statute is necessary, because the statute itself defines "employee" in hopelessly circular fashion as

### b. *The test and standard of review*

In *Berger Transfer & Storage,* the plan argued that the district court erred in its application of the common-law test for determining employee or independent contractor status under an ERISA plan. *Id.* at 1376. The Eighth Circuit Court of Appeals determined not only what standard of review was applicable to the question, but what factors should be considered to determine whether the owner-operators were employees or independent contractors. *Id.* at 1377–78.

As to the standard of review, the court wrote the following:

In *Short v. Central States, Southeast & Southwest Areas Pension Fund,* 729 F.2d 567, 571 (8th Cir.1984), we stated that "[w]hether a given individual is an employee or independent contractor is a question of law, which must be decided by reviewing the particular facts of each case." We then looked to the common-law test for distinguishing employees from independent contractors, relying primarily on the enumeration of factors in the Restatement (Second) of Agency, § 220 (1957). *Id.* at 572. We balanced these factors to reach the ultimate legal conclusion as to whether the owner-operators were employees or independent contractors. No specific attack was made on the factors weighed to reach the ultimate conclusion in the case, so it was unnecessary to state whether the particular factual issues being weighed would, if attacked, be reviewed as questions of law or questions of fact.

It is evident that the district court's findings underlying each of the common-law factors are factual findings, while the ultimate conclusion as to whether an individual is an employee or an independent contractor is a question of law. The standard of review has been well expressed as follows:

"any individual employed by an employer." 29 U.S.C. § 1002(6). ·

The court concludes that, where an ERISA plan is silent as to the definition of "employee," it is reasonable to assume that the same definition as is applicable to who is an "employee" under the ERISA *statute* would apply to who is an "employee" under an ERISA *plan. Compare*

The existence and degree of each factor is a question of fact while the legal conclusion to be drawn from those facts—whether workers are employees or independent contractors—is a question of law. Thus, a district court's findings as to the underlying factors must be accepted unless clearly erroneous, while review of the ultimate question of employment status is de novo.

*Dole v. Snell,* 875 F.2d 802, 805 (10th Cir.1989) (deciding employee-independent contractor status under Fair Labor Standards Act) (quoting *Brock v. Superior Care, Inc.,* 840 F.2d 1054, 1059 (2d Cir. 1988)); *see also Henderson v. Inter–Chem Coal Co.,* 41 F.3d 567, 571 (10th Cir.1994); *Martin v. Selker Bros., Inc.,* 949 F.2d 1286, 1292 (3d Cir.1991); *Waxman v. Luna,* 881 F.2d 237, 240 (6th Cir.1989).

*Berger Transfer & Storage,* 85 F.3d at 1377–78. Thus, there can be little question that whether a person is an employee or an independent contractor under an ERISA plan is a question of law, reviewed de novo, but one founded upon specific findings of· fact, reviewed for clear error. *Id.*

As to what test the court is to apply to this question of law, in *Berger Transfer & Storage,* the Eighth Circuit Court of Appeals relied on the Supreme Court's decision in *Darden:*

Some years after we decided *Short,* the Supreme Court held that a common-law test should be applied to determine who qualifies as an employee under ERISA. *Nationwide Mutual Insurance Co. v. Darden,* 503 U.S. 318, 323–24, 112 S.Ct. 1344, 1348–49, 117 L.Ed.2d 581 (1992). The Court instructed:

In determining whether a hired party is an employee under the general common·law of agency, we consider the hiring party's right to control the manner

*Epright,* 81 F.3d at 340 (where the plan contained no definition of "full-time employee," it was reasonable for the court to look to the Social Security Act for a definition). Where the parties intended some definition other than the one applied to "employee" under the statute itself, that is, some definition other than that provided by federal common law, they were free to specify such a definition.

and means by which the product is accomplished. Among the other factors relevant to this inquiry are the skill required; the source of the instrumentalities and tools; the location of the work; the duration of the relationship between the parties; whether the hiring party has the right to assign additional projects to the hired party; the extent of the hired party's discretion over when and how long to work; the method of payment; the hired party's role in hiring and paying assistants; whether the work is part of the regular business of the hiring party; whether the hiring party is in business; the provision of employee benefits; and the tax treatment of the hired party.

*Id.* (quoting *Community for Creative Non–Violence v. Reid,* 490 U.S. 730, 751–52, 109 S.Ct. 2166, 2178–79, 104 L.Ed.2d 811 (1989) (footnotes omitted)). As the district court recognized, "[s]ince the common-law test contains 'no shorthand formula or magic phrase that can be applied to find the answer, ... all of the incidents of the relationship must be assessed and weighed with no one factor being decisive.'" *Id.* at 324, 112 S.Ct. at 1349 (quoting *NLRB v. United Ins. Co. of Am.,* 390 U.S. 254, 258, 88 S.Ct. 988, 991, 19 L.Ed.2d 1083 (1968)).

The district court recognized that the proper inquiry was the hiring party's right to control the manner and means by which a task is accomplished. The court then balanced the *Darden* factors on each side of the employee-independent contractor question to reach its conclusion.

*Berger Transfer & Storage,* 85 F.3d at 1378; *Collins,* 18 F.3d at 560 (quoting identical portions of *Darden* ). Thus, the Eighth Circuit Court of Appeals, in deciding who was an "employee" under an ERISA plan that apparently did not otherwise define the term, has relied on the common-law test of who is an employee, which Fortis asserts is the proper test here.

The application of the *Darden* factors by the Eighth Circuit Court of Appeals in *Berger Transfer & Storage* is also enlightening.

The appellate court approved the district court's findings of elements of autonomy exercised by the owner-operators. *Id.* The court, citing *Darden,* 503 U.S. at 323, 112 S.Ct. at 1348, emphasized that "the fundamental inquiry [i]s whether the hiring party has the 'right to control the manner and means by which the product is accomplished,' " not whether those rights are actually exercised, and that the court must consider the common-law factors in determining right of control, assessing " 'all of the incidents of the relationship ... with no one factor being decisive.'" *Berger Transfer & Storage,* 85 F.3d at 1379 (quoting *Darden,* 503 U.S. at 323–24, 112 S.Ct. at 1348–49). The court also found that *Darden* sets out "a nonexhaustive list of factors for a district court to consider in its analysis." *Id.* Over objections that the district court had focused solely on the factors that it believed supported its ultimate finding, the appellate court concluded that, although the factors the objecting party asserted had not been properly considered were factors a court should consider, and further concluded that those factors did favor one status over the other in the case before it, the factors had to be weighed with all other evidence and did not compel the conclusion for which they were cited. *Id.* at 1379–80; *see also Collins,* 18 F.3d at 560 (also recognizing that some of the factors weighed against the employee status decided upon by the trustee of the plan, but concluding that, where the evidence supported both parties' positions, the court could not find the trustee's decision arbitrary or capricious).

### c. Application of the common-law factors

This court turns next to application in this case of the *Darden* factors, as stated by the Eighth Circuit Court of Appeals in *Berger Transfer & Storage.* The overarching issue is " 'the hiring party's right to control the manner and means by which the product is accomplished.'" *Berger Transfer & Storage,* 85 F.3d at 1378 (quoting *Darden,* 503 U.S. at 323, 112 S.Ct. at 1348). Turning to the various factors relevant to this inquiry, the court finds that some of them simply have little or

no impact here one way or the other.[16] Others are more instructive. For example, a few factors plainly weigh in favor of "employee" rather than "independent contractor" status. The long duration of the relationship between the parties may weigh in the direction of "employee" rather than "independent contractor" status, as may the fact that Coonley's work was part of the regular business of ABCM. *Id.*, 85 F.3d at 1378 ("Among the other factors relevant to the inquiry are ... 'the duration of the relationship between the parties [and] whether the work is part of the regular business of the hiring party,'" quoting *Darden*, 503 U.S. at 323–24, 112 S.Ct. at 1348–49). Furthermore, ABCM was in business. *Id.* ("Among the other factors relevant to the inquiry [is] 'whether the hiring party is in business,'" quoting *Darden*, 503 U.S. at 323–24, 112 S.Ct. at 1348–49). Coonley also seems to have received certain employee benefits, or to have been considered by the company to be able to receive employee benefits. *Id.* ("Among the other factors relevant to the inquiry [is] 'the provision of employee benefits,'" quoting *Darden*, 503 U.S. at 323–24, 112 S.Ct. at 1348–49).

The larger share of the factors, however, suggests Coonley's autonomy. The source of the instrumentalities and tools was, to a very large extent, Coonley himself or the offices of Coonley & Coonley in Hampton, Iowa. *Id.* ("Among the other factors relevant to the inquiry [is] 'the source of the instrumentalities and tools,'" quoting *Darden*, 503 U.S. at 323–24, 112 S.Ct. at 1348–49). Similarly, the location of the work was where Coonley chose to operate. *Id.* ("Among the other factors relevant to the inquiry '[is] the location of the work,'" quoting *Darden*, 503 U.S. at 323–24, 112 S.Ct. at 1348–49). Only two days a week, according to the undisputed record, did Coonley regularly work from the ABCM offices in Cedar Rapids. The rest of the week, he worked for ABCM out of the offices of Coonley & Coonley. Coonley was also entirely autonomous in deciding which projects he would pursue when and there is no indication of routine "assignment" of tasks from ABCM. *Id.* ("Among the other factors relevant to the inquiry [are] 'whether the hiring party has the right to assign additional projects to the hired party [and] the extent of the hired party's discretion over when and how long to work,'" quoting *Darden*, 503 U.S. at 323–24, 112 S.Ct. at 1348–49). Coonley clearly decided when and how long to work. It is equally clear that Coonley controlled the method of payment through his PC without the normal payroll deductions. *Id.* ("Among the other factors relevant to the inquiry [is] 'the method of payment,'" quoting *Darden*, 503 U.S. at 323–24, 112 S.Ct. at 1348–49). Coonley also had complete authority in hiring and paying assistants, as his support staff at Coonley & Coonley provided his secretarial and other services even for work performed for ABCM. *Id.* ("Among 'the other factors relevant to the inquiry [is] the hired party's role in hiring and paying assistants,'" quoting *Darden*, 503 U.S. at 323–24, 112 S.Ct. at 1348–49).

Although the court does not wish to put undue emphasis upon a single factor, *id.* ("'all of the incidents of the relationship must be assessed and weighed with no one factor being decisive,'" quoting *Darden*, 503 U.S. at 324, 112 S.Ct. at 1349), one telling factor in the circumstances of this case is the tax treatment of Coonley, both by Coonley and by ABCM. *Id.* ("Among the other factors relevant to the inquiry [is] 'the tax treatment of the hired party,'" quoting *Darden*, 503 U.S. at 323–24, 112 S.Ct. at 1348–49). Coonley funneled all of his income through his PC, and ABCM paid the PC for Coonley's services, without making any payroll deductions, which Coonley later took from his salary from the PC. Furthermore, ABCM declared Coonley's compensation,

---

**16.** The factors the court finds have little impact include the skill required. *Berger Transfer & Storage*, 85 F.3d at 1378 ("'Among the other factors relevant to the inquiry [is] the skill required,'" quoting *Darden*, 503 U.S. at 323–24, 112 S.Ct. at 1348–49). According to the undisputed record, Coonley performed essentially the same functions as the other three principals of the company, and there is no indication that those skills were such that an independent contractor would more likely provide them. Furthermore, to the extent Coonley employed his skills as a licensed attorney, those skills do not necessarily set him apart as either an in-house or outside counsel.

made to the PC, as "non-employee compensation," and reported it on a Form 1099 rather than on a W–2 form. That compensation was also reported on ABCM's company books as non-employee compensation. The factor of tax treatment might mean little alone; however, here, the tax treatment is in keeping with various other factors in the *Darden* analysis that point toward Coonley's status as an independent contractor, adding significantly to the weight of the tax treatment in the circumstances.

Although there may be contrary indications from some of the factors the plaintiffs have cited, the court concludes that, in light of all of the evidence, these factors do not compel a conclusion that Coonley was an "employee" of ABCM. *See Berger Transfer & Storage,* 85 F.3d at 1380 (although factors asserted by one party did favor the employment status that party asserted, they did not compel a conclusion favorable to that party in light of all of the evidence); *Collins,* 18 F.3d at 560 (also recognizing that some of the factors weighed against the employee status decided upon by the trustee of the plan, but concluding that, where the evidence supported both parties' positions, the court could not find the trustee's decision arbitrary or capricious). Rather, considering and weighing all of the incidents of the relationship, *Berger Transfer & Storage,* 85 F.3d at 1378 (citing *Darden,* 503 U.S. at 324, 112 S.Ct. at 1349), the court concludes that Coonley was an independent contractor rather than an employee of ABCM.

Because the court concludes that Coonley was not an employee of ABCM within the meaning of the Plan, and because "employee" status is required for coverage under the Plan, the court concludes that Fortis's motion for summary judgment must be granted, and the plaintiffs' cross-motion for summary judgment must be denied.

### V. CONCLUSION

Under any of the three standards advanced by the parties, the court concludes that Coonley was not covered under the life insurance policy with Fortis. The plaintiffs' argument that Coonley was covered under the clear and unambiguous language of the Plan, because Coonley was an "officer," fails, because the Plan unambiguously defines two classes of eligibility, neither of which is de-fined in terms of "officer" status. To rely on the benefits schedule, which states the amount of coverage for officers, as creating coverage on the basis of "officer" status would render nugatory the provisions of the Plan that define eligibility.

Next, the court concludes that Coonley was not an employee under the ordinary, or dictionary meaning of the term, because Coonley was not the "person" "hired" by ABCM to "work" for "wages or a salary." Rather, from 1985 until Coonley's death, the "salary" for Coonley's services to ABCM was not paid directly to Coonley, but was instead paid to his PC. It was the PC, not Coonley, that ABCM hired to perform work for it. The plaintiffs' alternative argument, that "employee" is ambiguous within the meaning of the Plan, fails, because "employee" is not inherently ambiguous, and because the term "employee" is not reasonably susceptible to an interpretation that would include the employment arrangement between Coonley, his PC, and ABCM.

Finally, under the standard of federal common law, which provides factors for distinguishing between an employee and an independent contractor, Coonley was an independent contractor. Although some of the factors in the common-law test do point toward Coonley's employee status, the greater number of the factors, and those that are more telling in the circumstances, point toward Coonley's status as an independent contractor. Thus, the court concludes that Coonley was not an employee of ABCM within the meaning of the Plan. Because "employee" status is required for coverage under the Plan, and Coonley did not have that status, Coonley was not a covered person within the meaning of the Plan.

Therefore, the court concludes that Fortis's motion for summary judgment must be **granted,** and the plaintiffs' cross-motion for summary judgment must be **denied.** Judgment in this matter, in its entirety, shall therefore be entered in favor of defendant Fortis and against the plaintiffs.

**IT IS SO ORDERED.**